IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


MARY E. GLOVER,                 )
individually and on behalf      )
of other similarly situated     )
former and current              )
homeowners in Pennsylvania,     )
                                )
            Plaintiffs,          )   Civil No. 08-990
                                )
            v.                   )
                                )
MARK J. UDREN, UDREN LAW        )
OFFICES, P.C., WELLS FARGO      )
HOME MORTGAGE,                  )
                                )
            Defendants.          )


REPORT AND RECOMMENDATION

I. Recommendation

        Presently before the Court is Defendant's, Wells Fargo
Home Mortgage, motion to dismiss the second amended complaint
under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon
which relief can be granted.   It is respectfully recommended
that the district court grant in part and deny in part the
motion to dismiss (Docket No. 129).

II. Discussion

A.  Facts

On or about August 2, 2002, the Plaintiff, Mary Glover ("Glover"), entered into a mortgage loan transaction with Washington Mutual Bank ("WalMu"). Glover executed a note in the principal amount of $9,997 in favor of WalMu and agreed to make monthly payments for principal and interest, in addition to monthly escrow payments for taxes and insurance.

On or about July 29, 2003, WalMu sold Glover's loan, among others, to Goldman Sachs Mortgage Company ("Goldman Sachs") under a Purchase and Servicing Agreement. WalMu retained the servicing rights on Glover's loan.

In March 2005, Glover was injured in an automobile accident and suffered a loss of income. Glover contacted WalMu and requested a loan modification to reduce her monthly payments. Effective December 1, 2005, Glover entered into a Special Forbearance Agreement with WalMu. Under the terms of the Agreement, WalMu agreed to postpone certain of Glover's monthly payments and not to charge attorneys' fees. It also agreed to reevaluate Glover's request for financial assistance on April 1, 2006.

Prior to that time, however, on March 14, 2006, WalMu informed Glover by letter that her application for a loan work-out had been denied. WalMu then authorized Udren Law Offices to

commence foreclosure proceedings against Glover. Udren filed a mortgage foreclosure complaint on April 10, 2006 in the Court of Common Pleas of Allegheny County. The amount due was calculated at $12,652.36.

Although the foreclosure complaint had been filed, and despite WalMu's earlier denial of a loan workout, on June 7, 2006, WalMu offered Glover a loan modification agreement. The letter accompanying the loan modification agreement informed Glover that her principal balance had increased by $2,237.73 – $806.45 for delinquent interest and $1431.19 for "Escrow/ Advance/Set-up. The letter then gave Glover conflicting directives concerning her responsibility to pay $3,696.00 in foreclosure fees and costs. In one sentence, the letter instructed Glover to remit a certified check in that amount to WalMu, but, a later sentence indicated the amount due as $0.00. In any event, Glover did not pay the $3.696.00, nor did WalMu subsequently request payment.

On November 15, 2006, WalMu informed Glover that the servicing of her mortgage loan was being assigned, sold, or transferred to Wells Fargo Bank, N.A. ("Wells Fargo"). From that date on, Glover dealt with Wells Fargo concerning her mortgage payments, including a loan modification agreement entered into on

January 4, 2008.  As of the filing of the amended complaint on October 14, 2009, Glover has made payments in accordance with the terms of the loan modification agreement.

On June 9, 2008, Glover commenced a putative class action in the Court of Common Pleas of Allegheny County alleging, *inter alia*, illegal lending and servicing practices against WalMu, Wells Fargo, Mark Udren, and Udren Law Offices.[1]  The case was removed to this jurisdiction and was eventually stayed pending exhaustion of administrative proceedings before the FDIC. When the administrative proceedings concluded, Glover filed an amended complaint.  On January 4, 2010, Wells Fargo filed an answer to the amended complaint and, on February 5, 2010, that same defendant filed a Motion for Judgment on the Pleadings to which Glover filed a response.  On April 26, 2010, before the motion was adjudicated, the Court held a status conference.  At that conference, counsel for Glover informed the Court that he intended to file a second amended complaint to add Goldman Sachs Mortgage Company as a party.  Wells Fargo then agreed to withdraw its pending motion for judgment on the pleadings.

------

[1]        Although Plaintiff was ordered to define the parameters of the class by April 12, 2010, and the parties were ordered to submit their proposed class definition by April 22, 2010 (Doc. # 97), there has been no activity concerning class certification.

On June 9, 2010, Glover filed a second amended complaint. Relevant to the instant matter, the allegations against Wells Fargo include claims of breach of contract (counts I-IV), unjust enrichment (count IX), violations of the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq., (count XI), Pennsylvania's Fair Credit Extension Uniformity Act ("FECUA"), 73 P.S. §2270.4(a)(counts XIV and XV), Pennsylvania's Loan Interest and Protection Act ("Act 6") 41 P.S. § 101, *et seq.* (count XVI), and Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §201-2 (count XVII). On July 21, 2010 Wells Fargo filed a partial motion to dismiss counts I, II, III, IV, IX, XIV, XVI, and XVII of the second amended complaint with prejudice for failure to state a claim upon which relief can be granted.

B. Standard of Review

The United States Supreme Court opinions in Bell Atlantic Corporation v. Twombly, 550 U.S. 544 (2007) and, more recently, in Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009), have shifted pleading standards from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss. With the Supreme Court instruction in mind, the Court of Appeals

for the Third Circuit has outlined a two-part analysis that courts should utilize when deciding a motion to dismiss for failure to state a claim. First, the factual and legal elements of a claim should be separated. In other words, while courts must accept all of the complaint's well-pleaded facts as true, they may disregard any legal conclusions. Second, courts then decide whether the facts alleged in the complaint are sufficient to demonstrate that the plaintiff has a "plausible claim for relief." Iqbal, 129 S. Ct. at 1950. That is, a complaint must do more than allege the entitlement to relief; its facts must show such an entitlement. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-211 (3d Cir. 2009).

### C. Legal Claims

### 1. Breach of Contract

Counts I-IV of the complaint allege that Wells Fargo breached contractual obligations it owed to Glover. Glover specifically complains the Wells Fargo overcharged her and misallocated her monthly payments (count I), collected unauthorized escrow charges (count II), breached the escrow provisions of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601-2617 (count III), and charged and/or collected unauthorized attorney's fees and costs (count IV).

Wells Fargo's response to these allegations is straightforward - Glover's breach of contract claims against it fail as a matter of law because it was not a party to the note and mortgage.

To maintain a cause of action for breach of contract the plaintiff must establish:  (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) damages resulting from the breach. McShea v. City of Philadelphia, 995 A.2d 334, 340 (Pa. 2010).  A person who is not a party to a contract is not subject to liability when one of the parties breaches the agreement. Fleetway Leasing Company v. Wright, 697 A.2d 1000, 1003 (Pa. Super. 1997).

The Court agrees that Wells Fargo cannot be held liable for breaches arising from the original contract, i.e., the mortgage and note, between Walmu and Glover.  See Ruff v. America's Servicing Company, Civil Action No. 07-0489, 2008 WL 1830182, at *4 (W.D.Pa. April 23, 2008)(loan servicer not a party to the mortgage and cannot be held liable for breach of contract).  However, to the extent that the allegations of the complaint concern Wells Fargo's contractual obligations arising from the January 4, 2008 loan modification agreement, Glover has pled a cognizable breach of contract claim under count I.

In Pennsylvania, " '[a] contract is formed when the parties to it 1) reach a mutual understanding, 2) exchange consideration, and 3) delineate the terms of their bargain with sufficient clarity.'" Forest Glen Condominium Association v. Forest Green Common Ltd. Partnership, 900 A.2d 859, 863-64 2006 PA Super 99 (2006)(quoting Weavertown Transport Leasing, Inc. v. Moran, 834 A.2d 1169, 1172, 2003 PA Super 385 (2003)). The January 4, 2008 loan modification document identifies the parties to the agreement as Glover, the "Borrower" and Wells Fargo, the "Lender." Sec. Am. Compl., Ex. R. The agreement then recites that, in exchange for valuable consideration, the parties agreed to modify, *inter alia*, the loan principal and the terms of payment. While the loan modification makes clear that the Borrower remains obligated under the original mortgage and note, except as so amended, the agreement clearly delineates new contractual responsibilities between Glover and Wells Fargo. Thus, to the extent that count I alleges that Wells Fargo breached contractual obligations arising out of the January 4, 2008 loan modification agreement, the Court should deny Wells Fargo motion to dismiss.

In count II, Glover contends that Wells Fargo breached a contractual obligation regarding unauthorized collection and

handling of escrow charges. According to the complaint, the mortgage governed the manner in which the lender could charge interest when it advanced escrow payments owed by the borrower to third parties. Additionally, the mortgage required lenders to comply with RESPA and notify borrowers if escrow shortages occurred and provide an opportunity for the borrower to make up the shortage. The complaint alleges that Wells Fargo improperly charged interest on escrow advances prior to their actual disbursement to the relevant third parties and, therefore, breached the contract.

As the paragraphs of the complaint make clear, the contractual obligations at issue in count II arise from the language in the mortgage, a contract entered into between WalMu and Glover. As Wells Fargo is not a party to that contract, it cannot be held liable for a breach of its terms. Accordingly, the motion to dismiss count II should be granted with prejudice.

This same reasoning compels dismissal of count III of the complaint which alleges that Wells Fargo breached the escrow contractual RESPA provisions in the mortgage. Wells Fargo is not bound by Walmu's agreement in the mortgage to adhere to the RESPA escrow requirements, thus, count III should likewise be dismissed with prejudice.

Count IV of the complaint alleges that a contract breach occurred when homeowners were charged and paid unauthorized attorney's fees and costs. This count includes "Homeowners who paid attorney's fees and costs as a result of a proposed state judgment never signed, or signed by the Prothonotary or its deputy." Sec. Am. Compl. ¶ 135. Glover does not allege any facts showing that she is included in this group of homeowners nor do the docket entries related to foreclosure action filed against her in Allegheny County reveal that her case involved either an unsigned proposed state judgment or a judgment signed by the Prothonotary or its deputy. <u>Id</u>. at Ex. F-1. Therefore, count IV should be dismissed with prejudice. <u>See</u> <u>In re Flonase Antitrust Litigation</u>, 610 F.Supp.2d 409, 414 (E.D.Pa. 2009)(it is uncontested that "to be a class representative on a particular claim, the plaintiff himself must have a cause of action on that claim.")(citing <u>Zimmerman v. HBO Affiliate Group</u>, 834 F.2d. 1163, 1169 (3d Cir. 1987)).

2. <u>Unjust Enrichment</u>

In count IX, Glover urges that, in the event Wells Fargo is determined not to be a party to the mortgage and note, then it was unjustly enriched when it collected and retained unauthorized fees, costs, and expenses as set forth in the breach

of contract claims.  Glover additionally claims that Wells Fargo was unjustly enriched when it retained a percentage of unpaid debt balance as such payments were improperly inflated as a result of those fees, costs, and expenses not authorized by the loan agreement.

The elements of unjust enrichment are:  "benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." Northeast Fence & Iron Works, Inc. v. Murphy Quigley Company, Inc. , 933 A.2d 664, 668-69, 2007 PA Super 287(2007)(quoting AmeriPro Search, Inc. v. Fleming Steel Company, 787 A.2d 988, 991, 2001 PA Super 325 (2001)).  "To sustain a claim of unjust enrichment, a claimant must show that the party against whom recovery is sought either wrongfully secured or passively received a benefit that it would be unconscionable for her to retain."  Torchia v. Torchia, 499 A.2d 581, 582 (Pa. Super. 1985)(quotation omitted).  The critical element of the doctrine is the injustice of the enrichment and requires more than a showing that the defendant may have benefited in some way from the disputed conduct.  Lackner v. Glosser, 892 A.2d 21, 34, 2006

PA Super 287 (2006)(quotation omitted); <u>Sovereign Bank v. BJ's</u>
<u>Wholesale Club, Inc.</u>, 533 F.3d 162, 180-81 (3d Cir. 2008) (claim
for unjust enrichment requires more than showing defendant may
have benefited from disputed conduct).

Wells Fargo urges that Glover has failed to state a
claim for unjust enrichment because the contested fees, expenses,
and costs upon which she bases her claim were not paid to and
retained by Wells Fargo, rather it only collected those fees in
its capacity as Glover's loan servicer. It further contends that
any alleged benefit it did receive from collection of those fees
was derived from its servicing agreement with Goldman Sachs and
that it is inconsequential that Goldman Sachs compensated Wells
Fargo from Plaintiff's loan payments.

The Court concludes that Glover has sufficiently stated
a claim for unjust enrichment to survive a Rule 12(b)(6)
dismissal. Despite Wells Fargo's attempt to shield itself from
liability because it only collected funds from Glover on behalf
of Goldman Sachs, it is undisputed that Goldman Sachs met its
contractual obligation to Wells Fargo under the servicing
agreement from loan payment proceeds paid by Glover. The
plaintiff has thus sufficiently alleged that her payments to
Goldman Sachs conferred a benefit that Wells Fargo appreciated.

Then, accepting as true Glover's allegation that certain amounts paid by her were not contractually authorized, she has stated a plausible claim for unjust enrichment as it would be inequitable for Wells Fargo's to retain a percentage of these illicit charges. Accordingly, for those allegations in the complaint for which Wells Fargo cannot be held liable under a breach of contract theory, namely, improper collection and handling of escrow charges (count II) and failure to adhere to RESPA provisions count III), Wells Fargo motion to dismiss count IX should be denied.

### 3. Fair Credit Extension Uniformity Act ("FCEUA")

Glover alleges that Wells Fargo violated 73 P.S. 2270.4(a) of the FCEUA, because its debt collection activities violated the Fair Debt Collection Practices Act (count XIV) and because Wells Fargo, as a creditor, misrepresented amounts owed by homeowners and improperly charged and/or collected improper amounts in violation of 73 P.S. §§ 2270.4(b)(5)(ii), 2740.4(b)(6)(i)(count XV).

Wells Fargo urges dismissal of the FCEUA Counts for two reasons: it is not a creditor as that term is defined by the statute and the statute does not apply to Glover's loan transaction because the FCEUA specifically excludes purchase

money mortgages from its purview.

The definitional section of the FCEUA, informs that the word "debt" does not include "money which is owed or alleged to be owed as a result of a loan secured by a purchase money mortgage on real estate. . . . " 73 P.S. § 2270.3. The statute does not specifically define "purchase money mortgage."

It is undisputed that Glover borrowed money from WalMu to acquire title to a property at 709 Henry Street, Clairton Pennsylvania. Sec. Am. Compl., Ex. B. The mortgage agreement contains the statement: "If any of the debt secured by this [Mortgage] is lent to Borrower to acquire title to the property, this [Mortgage] shall be a purchase money mortgage." Id. at Ex. B, ¶ 22. Despite this language, Glover argues that her loan is not a purchase money mortgage, as that term has been described in common law. Under common law, a purchase money mortgage resulted when the vendor of the property accepted a mortgage from the property buyer as part of the purchase price. Glover urges that, in the absence of an FCEUA definition of the term, Pennsylvania rules of statutory construction compel a conclusion that the common law definition endures.

The goal in interpreting statutes is to determine and give effect to the legislative intent. 1 Pa.C.S. § 1921(a).

14

Statutory language is construed according to its "common and approved usage," but "technical" phrases are "construed according to such peculiar and appropriate meaning or definition." 1 Pa.C.S. § 1903(a). Also, if the words of a statute are not explicit, the General Assembly's intent can be ascertained through a number of factors, including, examination of other statutes on similar subjects. In re 2003 General Election for Office of Prothonotary, 849 A.2d 230, 237 (2004)(citing 1 Pa. C.S. § 1921)). See also General Electric Environmental Services, Inc. v. Envirotech Corporation, 763 F.Supp. 113, 119 (M.D.Pa. 1991) (under Pennsylvania law, courts may consider interpretation of similar statutes to interpret Pennsylvania statute).

The term "purchase money mortgage" is not one within the common parlance, therefore, rules of construction regarding technical terms are applicable. As such, the Court looks to whether the term has been given a particular meaning. In United States v. Davoli, Civil Action No. 04-1035, 2006 WL 4491443, at *4 (W.D. Pa. November 22, 2006), this Court stated that, in Pennsylvania, a purchase money mortgage is one:

> (i) taken by the seller of the mortgaged property to secure the payment of all or part of the purchase price; or

> (ii) taken by a mortgagee other than
> the seller to secure the repayment of money
> actually advanced by such person to or on
> behalf of the mortgagor at the time the
> mortgagor acquires title to the property and
> used by the mortgagor at that time to pay
> all or part of the purchase price, except
> that a mortgage other than to the seller of
> the property shall not be a purchase money
> mortgage within the meaning of this section
> unless expressly stated so to be.

42 Pa.C.S. § 8141 (1)(i), (ii).

While this definition involved analysis of Pennsylvania's Lien Priority Law, it clearly represents legislative intent on the meaning of the term "purchase money mortgage." The Court is not aware that the legislature has ascribed a different meaning to the phrase and cannot perceive of a reason why the term should be construed differently in the context of the FCEUA. Accordingly, because the debt at issue here falls within the definition of a purchase money mortgage and the mortgage specifically declares it as this type of mortgage, the FCEUA does not apply here. Pearson v. LaSalle Bank, Civil Action No. 08-2306, 2009 WL 1636037, at *4 (E.D.Pa. June 9, 2009)(purchase money mortgage excluded from FCEUA). Wells Fargo motion to dismiss counts XIV and XV should, therefore, be

16

dismissed with prejudice.[2]

4.  <u>Loan Interest and Protection Act ("LIPL")</u>

Count XVI claims that Wells Fargo violated the LIPL by
collecting foreclosure-related attorney's fees in a manner
inconsistent with and unauthorized by sections 404 and 406 of the
Act and by adding and collecting unauthorized amounts to Glover's
unpaid debt balance which are recoverable under sections 501 and
502 of the LIPL.

Wells Fargo urges dismissal of the LIPL allegations
because it is not a "residential mortgage lender" as that term is
defined by the statute, it never collected foreclosure-related
attorney's fees from Glover, and Glover has not alleged any facts
establishing that she paid any attorney's fees to Wells Fargo
that violated the LIPL as part of her loan modification
agreement.

Under the statutory scheme of the LIPL, no legal
expenses may be charged by a residential mortgage lender before
it commences, *inter alia*, a mortgage foreclosure action.  41 P.S.
§ 403.  A "residential mortgage lender" is defined as: "any person
who lends money or extends or grants credit and obtains a

_____

[2]  Glover's FCEUA claim should be dismissed for the
additional reason that she has failed to plead a cognizable claim
under the FDCPA.  <u>See</u> discussion, *infra*.

17

residential mortgage to assure payment of the debt. . . . " 41 P.S. § 101.

Section 404 provides the debtor with a right to cure the default after receiving the notice of intent to foreclose from the residential mortgage lender. Section 406 then details the type and amount of attorney's fees that a residential mortgage lender shall contract for or receive with regard to residential mortgages.

The statute also provides for a treble-damage recovery of both excess interest and charges against any person who has collected such excess interest or charges:

> A person who has paid . . . charges prohibited or in excess of those allowed by this act . . . may recover triple the amount of such . . . charges in a suit of law against the **person** who has collected such excess . . . charges. Provided, That no action to recover such excess shall be sustained in any court of this Commonwealth unless the same shall have been commenced within four years from and after the time of such payment. Recovery of triple the amount of such excess interest or charges, but not the actual amount of such excess interest or charges, shall be limited to a four-year period of the contract.

41 P.S. § 502 (emphasis added). The statute defines "person" as "an individual, corporation, business trust, estate trust, partnership or association or any other legal entity, and shall

include but not be limited to residential mortgage lenders." 41 P.S. § 101.

While no Pennsylvania legislative history accompanies Section 502, see Matter of Grigsby, 127 B.R. 759, 762 (E.D.Pa. 1991), "[w]here words of a later statute differ from those of a previous one on the same subject, they presumably are intended to have a different construction." CSC Enterprises, Inc. v. State Police, Bureau of Liquor Control Enforcement, 782 A.2d 57, 63 (Pa. Commw. Ct. 2001)(citing Walton Estate, 409 Pa. 225, 186 A.2d 32 (1962)). With this precept of statutory construction in mind, the Court must ascribe significance to the language of § 502 which specifically provides for recovery of excessive charges against any person collecting such charges, wording not included in prior 41 P.S. § 4. If the legislature intended to limit recovery under §502 against only residential mortgage lenders, it would not have utilized the word "person", a term specifically defined by the statute as "not . . . limited to residential mortgage lenders." 41 P.S. § 101.

The Court acknowledges that Wells Fargo never collected foreclosure-related attorney's fees from Glover as it did not become Glover's loan servicer until after the foreclosure complaint had been filed. The Court also agrees that sections

404 and 406 of the LIPL would not apply to Wells Fargo in its capacity as a loan servicer because it does not fall within the definition of a residential mortgage lender. Since Wells Fargo did not obtain a mortgage from Glover to guarantee repayment of any debt, it is not a residential mortgage lender and cannot be held liable for violations of 404 or 406 of the LIPL.

Glover's allegation that it can recover for unauthorized amounts added to her unpaid debt balance under 41 P.S. § 502, however, survives dismissal. Glover's complaint alleges that Wells Fargo collected excessive and/or unauthorized escrow, interest, and late charges and unilaterally increased her debt by adding these unauthorized amounts to her balance. Sec. Am. Compl. ¶¶ 59, 209. Accepting these allegations as true, Glover has pled a cognizable claim the she is entitled to recover damages for these illegal charges under section 502 of the LIPL.

5.) <u>Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL")</u>

The UTPCPL "protects consumers of goods and services from unfair or deceptive trade practices or acts." <u>Smith v. Commercial Banking Corporation</u>, 866 F.2d 576, 581 (3d Cir. 1989). Under 73 P.S. § 201-9.2(a), violations of the Act can be remedied through private action:

> Any person who purchases or leases
> goods or services primarily for personal,
> family or household purposes and thereby
> suffers any ascertainable loss of money or
> property, real or personal, as a result of
> the use or employment by any person of a
> method, act or practice declared unlawful by
> section 3 of this act, may bring a private
> action to recover actual damages or one
> hundred dollars ($100), whichever is
> greater. The court may, in its discretion,
> award up to three times the actual damages
> sustained, but not less than one hundred
> dollars ($100), and may provide such
> additional relief as it deems necessary or
> proper. The court may award to the
> plaintiff, in addition to other relief
> provided in this section, costs and
> reasonable attorney fees.

73 P.S. § 201-9.2(a).

To bring a private cause of action under the UTPCPL a plaintiff must establish: (1) he is a purchaser or lessee; (2) of a transaction dealing with goods or services; (3) primarily for personal, family, or household services; and (4) damages arising from the purchase of goods or services. _Keller v. Volkswagen of America, Inc._, 733 A.2d 642, 646 (Pa.Super.1999).

In count XVII, Glover avers that Wells Fargo violated the UTPCPL by misrepresenting and overcharging the amount she owed and that she relied upon these misrepresentations when she made her mortgage payments. Glover specifically asserts that

Wells Fargo violated provisions of the UTPCPL prohibiting:

> (v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have;

> . . .

> (xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

73 P.S. § 201-2(v), (xxi).

Wells Fargo first argues Glover does not have standing to bring the UTPPCPL claim because she never purchased goods or services from Wells Fargo. Wells Fargo's position is that the absence of a contractual relationship between it and Glover is fatal to litigation of this claim.

The Court, however, has already decided that a contract was formed between Glover and Wells Fargo when the parties entered into the loan modification agreement on January 4, 2008. Therefore, Glover has standing to assert a UTPCPL claim arising out of payments made in compliance with the modification agreement.

Wells Fargo also argues that the UTPCPL count should be dismissed because Glover failed to allege that it engaged in

fraudulent or deceptive activity or that she justifiably relied on any fraudulent or deceptive act.

In the complaint, Glover claims that Wells Fargo misrepresented the amount she owed and that she paid the misrepresented amounts and other overcharges. These facts, taken as true, fail to state a claim for relief under 73 P.S. § 201-2(4)(v) because they do not demonstrate that Wells Fargo made false or deceptive representations about the characteristics, uses, or benefits of the loan modification agreement. However, Glover has stated a plausible claim for relief under the "catch-all" provision of the UTPCPL, 73 P.S. § 201-2(xxi). Wells Fargo's alleged misrepresentation of the amounts due under the loan modification agreement could be considered deceptive conduct as it gave a false impression of the amount owed. An act is deceptive if it has to "capacity or tendency to deceive." Christopher v. First Mutual Corporation, Civil Action Nos. 05-0115, 05-1149, 2008 WL 1815300, at *11 (E.D.Pa. April 22, 2008)(quotation omitted).

Glover has likewise sufficiently alleged that she relied on Wells Fargo's alleged deceptive conduct when she made payments in accordance with Wells Fargo's calculations of the amount she owed. Accordingly, Wells Fargo's motion to dismiss

the subsection 201-2(4)(v) UTPCPL claim should be granted with prejudice and the motion to dismiss the subsection 201-2(xxi) UTPCPL claim should be denied.

### 6. Fair Debt Collection Practices Act ("FDCPA")

Count XI of the complaint alleges that Wells Fargo violated subsection §1692e(11) of the FDCPA, 15 U.S.C. §1692e(11). by "failing to correctly notify homeowners in subsequent communications that the communication is from a debt collector." Sec. Am. Compl. ¶171. The paragraph then specifically identifies a December 19, 2006 mortgage statement from Wells Fargo as an example of an offending communication and charges that the statement buried the required debt collector notice on its reverse side and did not inform the debtor that the back of the statement included important information.

Wells Fargo counters that its notice complied with the statutory requirements and, in any event, the claim is barred by the FDCPA one-year statute of limitations. 15 U.S.C. § 1692k(d). Wells Fargo notes that Glover's original complaint was filed in the Allegheny County Court of Common Pleas on June 9, 2008, more than one year beyond the December 19, 2006 mortgage statement.

While the statute of limitations for FDCPA claims expires one year from the date of violation, the limitations

period may be tolled when a claim charges a continuing violation. <u>Lennon v. Penn Waste, Inc.</u>, Civil Action No. 1:09-CV-0180, 2009 WL 3255238, at *1, n.1 (M.D. Pa. October 7, 2009). Glover argues that she has pled such a continuing violation because the December 17, 2006 mortgage statement is only one example of Wells Fargo's insufficient communication and the non-time specific portion of the complaint adequately infers that Wells Fargo continued its FDCP-offending practice within the limitations period.

Glover's general allegation that Wells Fargo's subsequent communications to homeowners failed to notify homeowners that it was a debt collector does not contain sufficient factual matter to support an inference that Wells Fargo violated the FDCPA's disclosure requirements. Because her conclusory statement asserts, but does not demonstrate, entitlement to relief, Glover has not met her pleading burden under <u>Iqbal</u>, 129 S. Ct. at 1949. For this reason, count XI should be dismissed with prejudice.

III. <u>Conclusion</u>

For the reasons stated, it is respectfully recommended that the court: 1) dismiss with prejudice counts II, III, IV (breach of contract), XIV and XV (FCEUA), and XI (FDCPA) of the

complaint; 2) deny the motion as to count IX (unjust enrichment with respect to improper handling of escrow charges and failure to conform to RESPA allegations); 3) dismiss count XVI (LIPA) with prejudice to the extent it seeks recovery under 41 P.S. §§ 401 and 406, but deny the motion with respect to recovery under 41 P.S. § 502; and, 5) dismiss count XVII (UTPCPL) with prejudice with respect to a claim under 73 P.S. § 201-9.2(v), but, deny the motion as to the claim under 73 P.S. § 201-9.2 (xxi).

Within the time limits set forth in the attached notice of electronic filing, any party may serve and file written objections to the Report and Recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of the objections to respond thereto. Failure to file timely objections may constitute waiver of any appellate rights.

Respectfully submitted,

s/Robert C. Mitchell
Robert C. Mitchell
United States Magistrate Judge

Entered: October 21, 2010