IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


MARY E. GLOVER,                        )
                                       )
individually and on behalf             )
of other similarly situated            )
former and current                     )
homeowners in Pennsylvania,            )
                                       )
                                       )  CIVIL NO. 08-990
                 Plaintiffs,           )
                                       )
         v.                            )
                                       )
MARK J. UDREN, UDREN LAW               )
OFFICES, P.C., WELLS FARGO             )
HOME MORTGAGE, GOLDMAN SACHS           )
MORTGAGE COMPANY                       )
                                       )
                 Defendants.           )


REPORT AND RECOMMENDATION


I. Recommendation

          Presently before the Court is Defendant's, Goldman

Sachs Mortgage Company ("GSMC"), motion to dismiss the second

amended complaint under Fed. R. Civ. P. 12(b)(6) for failure to

state a claim upon which relief can be granted.  Also pending is

Plaintiff's, Mary Glover ("Glover") motion to convert GSMC's

motion to dismiss to a motion for summary judgment under Fed. R.

Civ. P. 12(d).  It is respectfully recommended that the District

1

Court grant in part and deny in part the motion to dismiss (Doc. # 136) and deny the motion to convert (Doc. # 169).

II. <u>Report</u>

    A. <u>Factual and Procedural History</u>

On or about August 2, 2002, Glover entered into a mortgage loan transaction with Washington Mutual Bank ("WalMu"). Glover executed a note in the principal amount of $9,997 in favor of WalMu and agreed to make monthly payments for principal and interest, in addition to monthly escrow payments for taxes and insurance.

On or about July 29, 2003, WalMu sold Glover's loan, among others, to GSMC under a Purchase and Servicing Agreement. On April 1, 2004 the parties executed both an Amended and Restated Mortgage Loan Purchase and Sale Agreement (the "Purchase Agreement") (Sealed Doc. # 162) and an Amended and Restated Servicing Agreement (the "Servicing Agreement")(Sealed Doc. # 139).

In March 2005, Glover suffered a loss of income and requested WalMu for a loan modification to reduce her monthly payments. Effective December 1, 2005, Glover entered into a Special Forbearance Agreement wherein WalMu agreed to postpone certain of Glover's monthly payments and not to charge attorneys'

fees. It also agreed to reevaluate Glover's request for financial assistance on April 1, 2006. Prior to that time, however, on March 14, 2006, WalMu informed Glover that her application for a loan work-out had been denied. WalMu then authorized Udren Law Offices to commence foreclosure proceedings against Glover. Udren filed a mortgage foreclosure complaint on April 10, 2006 in the Court of Common Pleas of Allegheny County.

Although the foreclosure complaint had been filed, and despite WalMu's earlier denial of a loan workout, on June 7, 2006, WalMu offered Glover a loan modification agreement. The letter accompanying the loan modification agreement informed Glover that her principal balance had increased by $2,237.73 - $806.45 for delinquent interest and $1431.19 for "Escrow/Advance/Set-up. The letter then gave Glover conflicting directives concerning her responsibility to pay $3,696.00 in foreclosure fees and costs. In one sentence, the letter instructed Glover to remit a certified check in that amount to WalMu, but, a later sentence indicated the amount due as $0.00. In any event, Glover did not pay the $3.696.00, nor did WalMu subsequently request payment.

On November 15, 2006, WalMu informed Glover that the servicing of her mortgage loan was being assigned, sold, or transferred to Wells Fargo Bank, N.A. ("Wells Fargo"). From that

3

date on, Glover dealt with Wells Fargo concerning her mortgage payments, including a loan modification agreement entered into on January 4, 2008.

On June 9, 2008, Glover commenced a putative class action in the Court of Common Pleas of Allegheny County alleging, *inter alia*, illegal lending and servicing practices against WalMu, Wells Fargo, Mark Udren, and Udren Law Offices. [1] The case was removed to this jurisdiction and was eventually stayed pending exhaustion of administrative proceedings before the FDIC.

When the administrative proceedings concluded, Glover filed an amended complaint. Subsequent thereto, at an April 26, 2010 status conference, counsel for Glover informed the Court that he intended to file a second amended complaint to add GSMC as a party.

On June 9, 2010, Glover filed a second amended complaint. Relevant to the instant matter, the allegations against GSMC include claims for breach of contract (counts V-VIII) and wrongful delegation (count X). On August 13, 2010, GSMC filed a motion to dismiss the counts against it for failure

---

[1]    Although Plaintiff was ordered to define the parameters of the class by April 12, 2010, and the parties were ordered to submit their proposed class definition by April 22, 2010 (Doc. # 97), there has been no activity concerning class certification.

to state a claim upon which relief can be granted. After the briefs were submitted by the parties on the motion to dismiss, on October 27, 2010, Glover filed a motion to convert the motion to dismiss into a motion for summary judgment.

B. <u>Standard of Review</u>

1. <u>Conversion of Motion</u>

Before the standard of review can be delineated, it must be determined whether the motion to dismiss should be converted to a motion for summary judgment under Fed. R. Civ. P. 12(d).

When a Rule 12(b)(6) motion to dismiss contains and relies on matters outside the pleadings, and these matters are not excluded by the court, it must be treated as a motion for summary judgment. <u>In re Rockefeller Center Properties, Inc.</u> <u>Securities Litigation</u>, 184 F.3d 280, 287 (3d Cir. 1999). However, in adjudicating motions to dismiss, courts can consider materials integral to the complaint without converting the motion to one for summary judgment. <u>In re Burlington Factory</u> <u>Securities Litigation</u>, 114 F.3d 1410, 1426 (3d Cir. 1997).

The relevant documents currently included in the motion to dismiss record are the August 2, 2002 Mortgage and Note between Glover and WalMu (Doc. # 109, Exhibits A and B),

the April 1, 2004 Purchase Agreement, and the April 1, 2004 Servicing Agreement. These documents were either attached to or referenced in the complaint and/or submitted in connection with GSMC's motion to dismiss. Their authenticity is not disputed and can be consulted, if necessary, in deciding the motion to dismiss without conversion to a motion for summary judgment. See Jones v. ABN Amro Mortgage Group, Inc., 606 F.3d 119, 125, n.2 (3d Cir. 2010) (court may consider undisputedly authentic document that defendant attaches as exhibit to motion to dismiss if plaintiffs' claims are based on document).

Glover, however, argues that an additional document, a purported servicing agreement between GSMC and Wells Fargo, though not a part of the record, was relied upon by GSMC in its reply brief and that GSMC's reference to this agreement mandates that the motion to dismiss be converted to one for summary judgment.

Three of the five alleged de hors record references occurred in a single paragraph in the reply brief, as follows:

> [P]laintiff's contractual allegations against GSMC . . . remain predicated wholly upon on the conduct of plaintiff's loan servicers . . . and spring from a mischaracterization of the underlying legal relationships. . . . GSMC, however, never acquired or held any servicing rights with respect to plaintiff's loan; instead when GSMC purchased plaintiff's loan (among a

pool of others), as plaintiff acknowledges
in the Amended Complaint, WaMu expressly
retained the servicing rights and
exclusively exercised those rights until
Wells purchased the servicing rights in
November 2006, and Wells has since possessed
the exclusive rights to service the loan. .
. . GSMC had no right to delegate (and did
not delegate) any servicing authority and
had no obligation to service plaintiff's
loan.

GSMC Reply Brief at 2(Doc. # 161).

Glover also characterizes two subsequent statements in

GSMC's brief as inappropriate references to an agreement outside

the record: "GSMC never acquired any servicing rights, and thus

could not breach any contract term regarding servicing" and "the

transactional documents demonstrate that GSMC did not delegate

servicing rights, nor has GSMC been delegated such rights." Id.

at 4, 6.

As the above quotations reveal, GSMC never directly

cited to a document detailing its relationship with Wells Fargo.

While some of the language in GSMC's reply brief hints to the

fact of a contractual affiliation between GSMC and Wells Fargo,

only a constrained reading of these references compels a

conclusion that, at this stage in the litigation, the motion to

dismiss requires a conversion to one for summary judgment.[2]  For this reason, it is recommended that Glover's motion to convert (Doc. # 169) be denied.

    2.  <u>Motion to Dismiss</u>

        The United States Supreme Court opinions in <u>Bell Atlantic Corporation v. Twombly</u>, 550 U.S. 544 (2007) and, more recently, in <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937 (2009), have shifted pleading standards from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss. The Supreme Court outlined a two-part analysis that courts should utilize when deciding a motion to dismiss for failure to state a claim.  First, the factual and legal elements of a claim should be separated.  In other words, while courts must accept all of the complaint's well-pleaded facts as true, they may disregard any legal conclusions.  Second, courts then decide whether the facts alleged in the complaint are sufficient to demonstrate that the plaintiff has a "plausible claim for relief."  <u>Iqbal</u>, 129 S. Ct. at 1950.  A claim is facially

---

[2]     For the very reason that the record does not include any document describing the relationship between GSMC and Wells Fargo, it is later recommended in this Report that the motion to dismiss be denied to the extent that GSMC argues against liability for any misconduct by Wells Fargo in its servicing of Glover's mortgage.  <u>See</u> Discussion, <u>infra</u>.

plausible when the plaintiff pleads facts that permit a court to draw a reasonable inference that the defendant could be liable for the malfeasance alleged.  Id. at 1949.

C. Legal Claims

1.  Breach of Contract

Counts V through VIII of the complaint allege that GSMC, as owner of the note and mortgage, breached contractual obligations it owed to Glover. Glover specifically complains the GSMC is liable for instances when Walmu or Wells Fargo: 1) overcharged her and misallocated her monthly payments (count V); collected unauthorized escrow charges (count VI); and violated the escrow provisions of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601-2617 (count VII).  Glover alleges that these unauthorized activities resulted in an increase in the debt obligation owing to GSMC. Glover further contends that GSMC breached its contractual obligation when she was charged and Walmu or Wells Fargo charged and/ or collected unauthorized attorney's fees and costs (count VIII). Finally, Glover claims that GSMC wrongfully delegated its discretionary authority to accelerate her unpaid principal balance to the loan servicers (count X).

a. Relationship between WalMu and GSMC

On or about July 29, 2003, WalMu sold a pool of loans, including Glover's, to GSMC. On or about April 1, 2004 the two financial institutions executed both the Purchase Agreement and the related Servicing Agreement. Under the Purchase Agreement, WalMu, upon receipt of consideration, "shall sell, transfer, assign, set over, and convey to [GSMC], without recourse . . . all the right, title, and interest of [Walmu] in [Glover's mortgage loan], exclusive of the related servicing rights." Purchase Agreement, Art. 2.1. The Servicing Agreement provided that WalMu, "as independent contractor" was required to service mortgages "in accordance with this [servicing agreement] and Acceptable Servicing Procedures . . . ." Servicing Agreement, Art. 2. Acceptable Servicing Procedures are defined as "mortgage loan servicing standards and procedures prescribed by the [FHA, VA, or RHS Regulations, as applicable], or . . . those customary mortgage servicing practices of prudent mortgage lending institutions . . . ." Id. at Art.1. Section 9.16 of the Servicing Agreement reiterates that "any service of [WalMu] shall be rendered as an independent contractor and not as an agent for [GSMC].

b. Relationship between GSMC and Wells Fargo

According to the second amended complaint, in a

November 15, 2006 letter, WalMu notified Glover that Wells Fargo would become her loan servicer with respect to her mortgage payments, effective December 1, 2006. The record, however, does not include any information documenting the relationship, if any, between GSMC and Wells Fargo.

c. <u>Legal Discussion</u>

To maintain a cause of action for breach of contract the plaintiff must establish: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) damages resulting from the breach. <u>McShea v. City of Philadelphia</u>, 995 A.2d 334, 340 (Pa. 2010).

In its opening brief, GSMC argues that Glover's breach of contract claims should be dismissed for four reasons: 1) Glover has failed to plead an agency relationship between GSMC and its servicers; 2) even if an agency relationship was properly alleged, the servicers engaged in activity that constituted conduct outside the scope of its authority; 3) the contract claims are barred by the voluntary payment doctrine; and, 4) Pennsylvania law does not recognize a cause of action for wrongful delegation and, in any event, the alleged delegation was not prohibited by the mortgage.

In her response to the motion, Glover asserts that her contract claims are not dependent on any agency theory, but, are

reasoned instead on the principle that GSMC, the current owner of the loan contract, is itself legally responsible for the entire performance of the contract and its delegation of the servicing rights to WalMu and Wells Fargo did not relieve GSMC of its contractual obligations. Thus, the issue concerning the alleged contractual breaches has been narrowed to whether GSMC, as purchaser/assignee of Glover's mortgage, is directly liable for a breach of duty owing to Glover.

There are no specific allegations in the second amended complaint that GSMC itself committed any affirmative act that breached the terms of the contract. Rather, Glover contends that GSMC remains legally accountable for misconduct surrounding the performance of the contract because it cannot delegate or assign performance of its contractual obligations without agreement from Glover. See Restatement of Contracts (Second)§ 318(3) ("Unless the obligee agrees otherwise, neither delegation of performance nor a contract to assume the duty made with the obligor by the person delegated discharges any duty or liability of the delegating obligor").

Glover's theory of recovery premised on this Restatement Section, however, misses the mark. GSMC could not delegate servicing of the mortgage to WalMu, simply because it never acquired the right to service the mortgage. Under the

Purchase Agreement, GSMC, in exchange for consideration, was assigned WalMu's interest in Glover's mortgage loan, **"exclusive of the related servicing rights**." Purchase Agreement, Art. 2.1 (emphasis added). Additionally, the Servicing Agreement's Preliminary Statement notes that "[GSMC] has agreed to purchase from [WalMu] . . . without recourse and **on a servicing-retained basis** [certain residential mortgage loans]." Servicing Agreement, p. 1 (emphasis added). Accordingly, precepts of law concerning assignment of contracts, as opposed to delegation of contractual performance, govern.

Ordinarily, "an assignee stands in the shoes of the assignor." <u>Crawford Central School District v. Commonwealth of Pennsylvania</u>, 888 A.2d 616, 620 (Pa. 2005). However, this maxim is not without qualification. Section 328 of the Restatement of Contracts (Second) provides:

> (1) Unless the language or the circumstances indicate the contrary, as in an assignment for security, an assignment of "the contract" or of "all my rights under the contract" or an assignment in similar general terms is an assignment of the assignor's rights and a delegation of his unperformed duties under the contract.

> (2) Unless the language or the circumstances indicate the contrary, the acceptance by an assignee of such an assignment operates as a promise to the assignor to perform the assignor's unperformed duties, and the obligor of the

13

> assigned rights is an intended beneficiary of the
> promise.

Restatement (Second) of Contracts § 328; <u>Cf</u>. <u>American Flint</u>
<u>Glass Workers Union v. Anchor Resolution Corporation</u>, 197 F.3d
76, 81 (3d Cir. 1999)(when parties to transaction directly
manifest intent to assign less than all obligations, assignor
remains liable on unassigned obligations).

According to these authorities, GSMC would be
obligated to perform WalMu's contractual duties to Glover,
unless they agreed to the contrary. The language of the
agreements between GSMC and WalMu under consideration does
indicate otherwise. The parties expressly agreed that the
mortgage servicing duties were not part of the
purchase/assignment of the mortgage loan. This plain language
cannot be disregarded to permit Glover to proceed on her breach
of contract claims against GSMC; accordingly, Glover has not
alleged facts allowing the court to draw a reasonable inference
that GSMC can be held liable for the purported misconduct
arising from improper servicing of the mortgage. <u>Iqbal</u>, 129 S.
Ct. at 1949.

It is therefore recommended that GSMC's motion to
dismiss be granted with prejudice with respect to its

responsibility for WalMu's alleged wrongdoing in counts V, VI, VII, and VIII. It is recommended, however, that the motion be denied as to the similar allegations concerning malfeasance by Wells Fargo. As discovery has yet to proceed in this matter, there is no evidence in the record that defines the details of the relationship between GSMC and Wells Fargo. GSMC neither confirms nor denies that any such documented realtionship exists, but the court will not assume, on a motion to dismiss, that the relationship between GSMC and Wells Fargo mimics that of GSMC and WalMu.

d. <u>Paslowski v. Standard Mortgage Corporation of Georgia</u>

Because the parties vehemently contested the applicability of <u>Paslowski v. Standard Mortgage Corporation of Georgia</u>, 129 F. Supp. 2d 793 (W.D.Pa. 2000), to the matter herein, and because of the case's facial factual similarity, its holding will be briefly analyzed.

The Paslowskis entered into a mortgage agreement with South View Savings. Nine years later, Community Savings Association acquired the mortgage when it consolidated with South View. Later, Federal Home Loan Mortgage Corporation ("Freddie Mac") purchased a pool of mortgages from Community,

including Paslowskis. Pursuant to a seller/servicer agreement, Community continued to service the Paslowski mortgage, until Freddie Mac entered into a seller/servicer agreement with Standard Mortgage Corporation of Georgia.

The Paslowskis brought suit challenging the various mortgagees' administration of the mortgage loan agreement. As here, although the plaintiffs alleged direct liability against the owner of the mortgage, Freddie Mac, the complaint did not allege any affirmative act committed by the federal instrumentality.

In granting Freddie Mac's motion to dismiss, the court determined that: 1) Freddie Mac was not liable for breaches committed by South View or Community prior to the assignment of the mortgage rights to Freddie Mac; 2) the fiduciary relationship between South View and plaintiff did not transfer automatically to Freddie Mac; and, 3), Freddie Mac was protected on the breach of contract claim from liability for its servicers' breaches under the Merrill Doctrine which limits the legal responsibility of federal entities and instrumentalities for the actions of its agents or subcontractors. See Federal Crop Insurance Corporation v. Merrill, 332 U.S. 380, 383 (1947),

Glover contends that Paslowski is only applicable if GSMC is a federal entity like Freddie Mac; GSMC counters that

the Paslowski court separately and independently, and without reference to the <u>Merrill</u> doctrine, determined that Freddie Mac was not in breach of the contract and did not bear any direct liability for the actions of its servicers.

A careful reading of <u>Paslowski</u> supports the conclusion that the court applied the <u>Merrill</u> Doctrine exclusively to preclude the plaintiffs from pursuing a breach of contract action against Freddie Mac based on a theory of vicarious liability for the actions of its servicers.  However, as Glover informs that her breach of contract claims against GSMC are not dependent on an agency theory, this holding from the case is not relevant.  Second, the language from the decision cited by GSMC that purportedly offers a non-<u>Merrill</u> rationale for a finding against Freddie Mac liability concerned the entity's liability for breaches occurring prior to the assignment of mortgage rights to it and whether Freddie Mac breached a fiduciary duty owed to the plaintiffs.  Neither of these scenarios are present in the present case – Glover only asserts claims against GSMC for alleged misconduct after it purchased the mortgages from WalMu and Glover has not included a breach of fiduciary duty count in her complaint.  Thus, <u>Paslowski</u>, for all its factual similarities, provides scant legal guidance in this matter.

e. <u>Voluntary Payment Doctrine</u>

GSMC also argued that second amended complaint should be dismissed on the basis of the voluntary payment doctrine. Under this policy, "one who voluntarily pays money with full knowledge of the facts, without any fraud having been practiced upon him, cannot recover it back. <u>Coregis Insurance Company v. Law Offices of Carole F. Kafrissen, P.C.,</u> 140 F. Supp. 2d 461, 463 (E.D.Pa. 2001).

The facts alleged in the second amended complaint are sufficient to demonstrate that the plaintiff did not have full knowledge of the facts when she made certain of her mortgage payments; it is therefore recommended that the motion to dismiss be denied on the basis of the voluntary payment doctrine.

f. <u>Wrongful Delegation</u>

Count X of the second amended complaint alleges that GSMC wrongfully delegated its authority to accelerate Glover's unpaid principal debt. Glover contends that the acceleration clause in the mortgage is highly discretionary and cannot be delegated to a mortgage servicer.

As a threshold matter, GSMC urges that this count must be dismissed because it does not appear the Pennsylvania recognizes a cause of action for wrongful delegation. It further argues that, in any event, delegation of an acceleration decision is not prohibited as the mortgage is silent - neither

permitting nor disallowing such delegation.

Glover responds that her wrongful delegation claim does not contemplate a separate cause of action, but is a characterization of a particular breach of contract claim. Specifically, she claims that the delegation of the foreclosure decision to a mortgage servicer, i.e., a party with an adverse economic interest to maintaining the loan contract, thwarts her reasonable expectations and is therefore inconsistent with her contract with GSMC. While acknowledging that most contractual duties are delegable, Glover contends that because she has a substantial economic interest in GSMC making the foreclosure decision, delegation of this judgment to either WalMu or Wells Fargo represents a breach of contract. See Section 318(2) of the Restatement of Contracts (Second) ("[u]nless otherwise agreed, a promise requires performance by a particular person only to the extent that the obligee has a substantial interest in having that person perform or control the acts promised.")

Glover's wrongful delegation argument suffers from the same flaw as her other breach of contract claims. When GSMC purchased the mortgage from WalMu, the servicing rights were retained by WalMu. Having never acquired the rights, it follows that GSMC was not legally capable of delegating the right to make a foreclosure decision to WalMu. Indeed, the Servicing

19

Agreement expressly provides that, in the event that the mortgagor fails to abide by the terms of the mortgage, "[Walmu] shall . . . take such action, including commencing foreclosure, as it shall reasonably deem to be in the best interests of [GSMC]." Servicing Agreement, Section 2.2.

Thus, because the motion to dismiss record confirms that GSMC did not have the capacity to delegate a decision to foreclose on her mortgage, Glover has failed to allege facts allowing the Court to draw a reasonable inference that GSMC breached the contract on the basis of a wrongful delegation theory. Iqbal, 129 S. Ct. at 1949.

Accordingly, it is recommended that GSMC's motion to dismiss be granted with prejudice with respect to WalMu's foreclosure decision as alleged in count X. It is also recommended that the motion be granted as to the similar allegations concerning Wells Fargo as the complaint does not allege that Wells Fargo ever made a foreclosure decision concerning Glover's mortgage.

III. Conclusion

For the reasons stated, it is respectfully recommended that the District Court: 1) dismiss with prejudice counts V–VIII, as regards GSMC's responsibility for alleged wrongdoing by WalMu, but deny the motion as to allegations in counts V–VIII as

20

regards GSMC's responsibility for alleged wrongdoing by Wells Fargo; 2) deny the motion based on the voluntary payment doctrine; and 3) dismiss count X in its entirety with prejudice. It is also recommended that Glover's motion to convert the motion to dismiss to a motion for summary judgment be denied.

Within the time limits set forth in the attached notice of electronic filing, any party may serve and file written objections to the Report and Recommendation Any party opposing the objections shall have fourteen (14) days from the date of service of the objections to respond thereto. Failure to file timely objections may constitute waiver of any appellate rights.

Respectfully submitted,
s/Robert C. Mitchell
Robert C. Mitchell
United States Magistrate Judge

Entered: February 28, 2011