IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


MARY E. GLOVER,                    )
                                   )
individually and on behalf         )
of other similarly situated        )
former and current                 )
homeowners in Pennsylvania,        )
                                   )
                                   )   CIVIL NO. 08-990
              Plaintiffs,          )
                                   )
        v.                         )
                                   )
MARK J. UDREN, UDREN LAW           )
OFFICES, P.C., WELLS FARGO         )
HOME MORTGAGE, GOLDMAN SACHS       )
MORTGAGE COMPANY,                  )
              Defendants.          )


REPORT AND RECOMMENDATION


I. Recommendation

        Presently before the Court is Defendant's, Goldman

Sachs Mortgage Company's ("GSMC"), Motion for Summary Judgment

on Counts V through VIII of Plaintiff's, Mary Glover's

("Glover") second amended complaint ("the complaint") (Doc.

#474).   It is respectfully recommended that the motion be

granted.

II. Report

1

## A.  Factual and Procedural History

On or about August 2, 2002, Glover entered into a mortgage loan transaction with Washington Mutual Bank ("WaMu"). Glover executed a note in the principal amount of $9,997 in favor of WaMu and agreed to make monthly payments for principal and interest, in addition to monthly escrow payments for taxes and insurance.

On or about July 29, 2003, WaMu sold a pool of loans to GSMC under a Purchase and Servicing Agreement and, simultaneously, entered into a servicing agreement ("July 29, 2003 Servicing Agreement") which dictated the terms under which WaMu would service the loans acquired by GSMC. (Sealed Doc. # 183). On April 1, 2004 WaMu and GSMC executed both an Amended and Restated Mortgage Loan Purchase and Sale Agreement (the "Purchase Agreement") (Sealed Doc. # 162) and an Amended and Restated Servicing Agreement (Sealed Doc. # 139).

On or about September 27, 2005, GSMC purchased additional FHA, VA and RHS loans from WaMu through a Purchase Price and Terms Letter Agreement and pursuant to the terms and conditions of the April 1, 2004 Servicing Agreement ("Mortgage Loans will be serviced pursuant to the amended and restated Servicing Agreement dated as of April 1, 2004").  Birsic Decl.

Ex. 2, September 2005 Letter Agreement at 2 (Sealed Doc # 333). Glover's loan was included within the pool of loans purchased by GSMC pursuant to this letter agreement.

On November 15, 2006, WaMu informed Glover that the servicing of her mortgage loan was being assigned, sold, or transferred to Wells Fargo Bank, N.A. ("Wells Fargo"). From that date on, Glover dealt with Wells Fargo concerning her mortgage payments, including a loan modification agreement entered into on January 4, 2008.

On June 9, 2008, Glover commenced a putative class action in the Court of Common Pleas of Allegheny County alleging, *inter alia*, illegal lending and servicing practices against WaMu, Wells Fargo, Mark Udren, and Udren Law Offices.[1] The case was removed to this jurisdiction and was eventually stayed pending exhaustion of administrative proceedings before the FDIC.

When the administrative proceedings concluded, Glover filed an amended complaint. Subsequent thereto, at an April 26, 2010 status conference, counsel for Glover informed the Court that he intended to file a second amended complaint to add GSMC as a party.

---

[1] There are no remaining claims against Mark Udren and Udren Law Offices, P.C.

On June 9, 2010, Glover filed the currently operative complaint. The allegations against GSMC included claims for breach of contract (counts V-VIII) and wrongful delegation (count X). On August 13, 2010, GSMC filed a motion to dismiss the counts against it for failure to state a claim upon which relief can be granted. On March 29, 2011, the District Judge adopted our Report recommending that the motion to dismiss be granted on counts V-VIII as regards GSMC's responsibility for alleged wrongdoing by WaMu as the servicer of Glover's mortgage. The District Judge also adopted our recommendation that the motion be denied as to allegations regarding GSMC's responsibility for purported wrongdoing by Wells Fargo because the record did not include sufficient information regarding the contractual relationship between GSMC and Wells Fargo (Doc. # 213).

Following adjudication of its motion to dismiss, GSMC filed an answer to the complaint (Doc. # 241). After numerous discovery motions were filed, on September 8, 2011, we held an in-chambers conference in an effort to resolve the motions. At the outset of the conference, the parties were informed that we would consider appointing a special master if they persisted in inundating the court with discovery motions. At the conclusion

of the conference, fifteen (15) orders were entered on the then-outstanding discovery motions.

Despite the Court's admonition, on October 6, 2011, Glover filed eight discovery-related motions and, on October 11, 2011, Wells Fargo filed two. Accordingly, the Court ordered the parties to confer and select a special master for discovery.

After the parties agreed upon a special master, the Court ordered his appointment and referred the outstanding motions to him for disposition. Glover filed objections to the appointment of special master which the District Judge overruled in part and sustained in part (Doc. # 410).

In the midst of the activity connected to the special master appointment, on September 12, 2011, GSMC filed its original motion for summary judgment (Doc. # 325) and Glover filed her response (Doc. # 387). Glover also continued to seek review of the special master appointment, and this Court granted two motions to stay the proceedings while Glover pursued her relief. (Doc. ## 427, 459). Consequently, on May 30, 2012, the Court dismissed without prejudice GSMC's Motion for Summary Judgment pending the outcome of Glover's Petition for Writ of Mandamus in the Court of Appeals for the Third Circuit (Doc. # 460).

After Glover's mandamus petition was denied, on

September 24, 2012, the Court conducted a Status Conference at which time Glover's counsel stated that he was not going to proceed before the Special Master.  The Minute Entry docketed at the conclusion of the conference noted that no motions for discovery or amended briefs would be re-filed, and directed GSMC to re-file its summary judgment motion by October 2, 2012 (Doc. # 469).  The motion, Glover's response in opposition and GSMC's reply have been filed; the motion is now ripe for disposition.

> B.  <u>Standard of Review</u>

Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact."  <u>American Eagle Outfitters v. Lyle & Scott Ltd.</u>, 584 F.3d 575, 581 (3d Cir. 2009) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48, (1986)).  A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  <u>Anderson</u>, 477 U.S. at 248-49.

In undertaking this analysis, courts view the facts in

the light most favorable to the non-moving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Authority of New York & New Jersey, 593 F.3d 265, 268 (3d Cir. 2010) (citing Reliance Insurance Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997)). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the non-moving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

C. Discussion

GSMG argues that the Court should enter summary judgment in its favor for two reasons: Glover's remaining claims are barred by the law of the case doctrine and, even if the doctrine did not operate as a bar, Glover's contract claims fail because the undisputed facts demonstrate that GSMC never acquired or assumed any servicing rights or obligations in Glover's loan and, therefore, cannot be liable for the alleged wrongdoing by the loan servicer, Wells Fargo.

As regards the law of the case, our prior Report and Recommendation dismissed some of the breach of contract claims against GSMC. The Report observed that "[t]here [were] no

specific allegations in the second amended complaint that GSMC itself committed any affirmative act that breached the terms of the contract." Report and Recommendation at 12 (Doc. #202). The Report then examined the transactional documents defining the relationship of the parties and determined that precepts of law concerning assignment of contracts governed the rights/obligations of the parties. Applying these legal precepts, it was determined that, as between GSMC and WaMu, GSMC would be obligated to perform WaMu's contractual duties to Glover, unless they agreed to the contrary. The language of the agreements between GSMC and WaMu indicated otherwise as the parties expressly agreed that the mortgage servicing duties were not part of the purchase/assignment of the mortgage loan. The Report concluded that this plain language cannot be disregarded to permit Glover to proceed on her breach of contract claims against GSMC for alleged wrongdoing by WaMu. As noted, however, the breach of contract claims were not dismissed concerning Wells Fargo's alleged servicing misconduct because there was insufficient information regarding the contractual relationship between GSMC and Wells Fargo at the Rule 12(b)(6) stage of the proceedings to reach a conclusion as to liability.

In support of its current summary judgment motion, GSMC has now submitted evidence purporting to demonstrate that

GSMC and Wells Fargo did not execute a separate agreement regarding servicing rights and that the April 1, 2004 Servicing Agreement between GSMC and WaMu also governed Wells Fargo's servicing of Glover's loan. According to the deposition testimony of Kelli Murray, a former Vice President of GSMC, overseeing GSMC's mortgage portfolio[2], GSMC does not possess any documentation concerning Wells Fargo's 2006 acquisition of servicing rights from WaMu and that the servicing relationship between GSMC and Wells Fargo is governed by the July 29, 2003 WaMu/GSMC Servicing Agreement and April 1, 2004 Amended Servicing Agreement. Birsic Decl., Ex. 1. Murray Dep. pp. 24, 79. GSMC also produced an affidavit from Wells Fargo corporate representative, Jennifer Robinson, averring that the GSMC/WaMu agreement defined the owner/servicer relationship between GSMC and Wells Fargo. Birsic Decl., Ex. 3 Robinson Aff. ¶ 7 ("Wells Fargo involvement with Ms. Glover's loan is as the loan servicer on behalf of [GSMC], pursuant to the Servicing Agreement dated 7/29/2003").

GSMC contends that this evidence establishes that Wells Fargo services Glover's loan under the same agreement that

---

[2] Ms. Murray held this position from 2004 to 2008. She is currently the Vice President of Avelo Mortgage, LLC., an affiliate of GSMC that provides residential mortgage servicing oversight. Murray Aff. at ¶ 1 (Doc. # 470).

has been construed as foreclosing GSMC's liability for malfeasance by the loan servicer, thus, the law of the case doctrine precludes Glover's remaining breach of contract claims against GSMC.

GSMC also argues that Glover cannot sustain a breach of contract claim against it because she is unable to demonstrate that GSMC owed her any duties connected to the servicing of her loan. GSMC asserts that the complaint is devoid of allegations with respect to its actions and, that the factual record undisputed by Glover, makes clear that the alleged wrongful behavior is based upon actions of the loan servicer, Wells Fargo. Citing Glover's inability to produce any evidence of a breach of GSMC's contractual duties, GSMC urges that summary judgment should be entered in its favor.

Glover offers three reasons why summary judgment is not appropriate: 1) the law of the case doctrine should not apply because the legal framework previously established by the Court regarding the contractual obligations of the parties is incorrect; 2) the evidence proffered by GSMC is insufficient to demonstrate that its contractual position regarding servicing obligations was unchanged after Wells Fargo took over; and, 3) Wells Fargo acted as GSMC's agent when it entered into the January 4, 2008 loan modification agreement with Glover, thus

altering the analysis regarding the legal responsibilities of the parties. Glover has also filed a Fed. R. Civ. P. 56(d) affidavit requesting the Court to defer ruling on GSMC's summary judgment motion in order for her to conduct further discovery.

　　　1.　Law of the Case

　　　In *In re Pharmacy Benefit Managers Antitrust Litigation*, 582 F.3d 432 (3d Cir. 2009), the Court of Appeals for the Third Circuit discussed the contours of the law of the case doctrine: "A court has the power to revisit prior decisions of its own ... although as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would make a manifest injustice.'" Id. at 438 (quoting Christianson v. Colt Industries Operating Corporation, 486 U.S. 800, 816, (1988)). In addition to the extraordinary circumstance identified by the Supreme Court in Christianson, the Third Circuit recognized other circumstances that warrant a court's reconsideration of an issue decided earlier in the course of litigation, such as new evidence becoming available or the pronouncement of a supervening new law. 532 F.3d at 439 (citing Public Interest Research Group of New Jersey, Inc. v. Magnesium Elektron, 123 F.3d 111, 116 (3d Cir. 1997)). Also, the "law of the case doctrine does not preclude a trial judge from clarifying or

11

correcting an earlier, ambiguous ruling." Swietlowich v. County of Bucks, 610 F.2d 1157, 1164 (3d Cir. 1979).

Glover urges the Court to revisit its prior legal determination that GSMC cannot be held liable for the alleged wrongdoing by Glover's loan servicers by arguing that, under Pennsylvania law, the servicing rights, the right to collect on a note, cannot be alienated from the legal owner of the note. The cases cited by Glover, however, do not validate her thesis that the servicing rights/obligations cannot be assigned. In Girard Trust Company v. Philadelphia, 369 Pa. 499, 503, 87 A.2d 277, 279 (1952), the Pennsylvania Supreme Court, observing that "a mortgage is merely collateral for the payment of some primary obligation" determined that, as between a trustee who held certain property subject to a mortgage and the actual bond holders, the bond holders were responsible for payment of taxes on the property. In Andrews v. Marine National Bank of Erie, 33 A.2d 75 (Pa. Super. Ct. 1943), plaintiff, owner of bonds secured by a mortgage covering the real estate of a business, sued to recover funds collected and distributed by a bank, acting as an agent for the former bondholders. In affirming judgment in favor of the plaintiff, the Pennsylvania Superior Court held that "the purchase of a debt is a purchase of all the securities for the debt, whether named or not at the time of the

assignment, unless expressly agreed to at that time that they will not pass." Id. at 76. Finally, in American Home Mortgage Servicing, Inc. v. Tarantine, et al., MG 10-1664 (Allegheny County June 10, 2011), the court of common pleas held that loan servicer did not have standing to institute a foreclosure proceeding in its own name. Id. at 9.

These cases stand for the unremarkable and unchallenged legal theory that, even if servicing or other rights connected to the debt are assigned, the note holder remains liable for breaches of contract on the rights retained. See Ruff v. America's Servicing Company, No. 07-0489, 2008 WL 1830182, at *4 (W.D.Pa. April 23, 2008) (holding that a servicer was not liable for breach of contract because it was not a party to the mortgage). See also Trunzo v. Citi Mortg., ___ F. Supp. 2d.___, 2012 WL 2405257, at *6 (W.D.Pa. June 25, 2012) (mortgage servicer receives limited rights and obligations under mortgage contract relating to servicing; servicer not a party to original debt instruments and, therefore, cannot be held liable for breaches in obligations that remain held by note holder).

The cases, however, do not stand for the proposition that mortgage/note holders cannot assign servicing rights and obligations and, thus, do not provide the Court with reason to reconsider its prior determination that GSMC cannot be held

accountable for wrong doing by its loan servicers because it never acquired the servicing rights. Therefore, if the evidence propounded by GSMC demonstrates that Wells Fargo services Glover's loan under the same agreement that was construed as barring liability for malfeasance by WaMu, the law of the case should preclude Glover's remaining breach of contract claims against GSMC.

2. <u>GSMC's Evidence</u>

GSMC's evidence to support its claim that the April 1, 2004 Servicing Agreement between GSMC and WaMu also governed Wells Fargo's servicing of Glover's loan rests primarily on the testimony of Kelli Murray, a former Vice President of GSMC. As described above, Murray testified at her deposition that GSMC does not possess any documentation concerning Wells Fargo's 2006 acquisition of servicing rights from WaMu and that the servicing relationship between GSMC and Wells Fargo was governed by the July 29, 2003, WaMu/GSMC Servicing Agreement and the April 1, 2004 Amended Servicing Agreement. In a later affidavit,[3] Murray detailed the search for these documents and confirmed that GSMC

---

[3] At the September 24, 2012 Status Conference, the Court directed GSMC to produce an affidavit from a corporate officer that it cannot locate and produce documents sought by Glover's Rule 30(b)(6) document request and that the unexecuted copies of the relevant agreements are the operating agreements (Doc. # 469).

did not possess either a copy of the July 29, 2003 Mortgage Loan Purchase and Sale Agreement or a separate agreement between GSMC and Wells Fargo regarding the servicing of Glover's loan. She also affirmed her prior deposition testimony "that Wells Fargo is servicing Glover's loan pursuant to the April 1, 2004 Amended and Restated Servicing Agreement between GSMC and WaMu, and no separate agreement exists between GSMC and Wells Fargo regarding the servicing of Ms. Glover's loan." Murray Aff. ¶ 3 (Doc. # 470).

Glover criticizes the evidence propounded by GSMC as failing to demonstrate GSMC's contractual posture with regard to the servicing rights and obligations connected to Glover's loan. She contends that the evidence merely shows that Wells Fargo agreed to abide by the same servicing guidelines as WaMu, and does not respond to the operative issue of the terms under which the servicing rights were transferred. Glover maintains that the transfer of servicing functions from WaMu to Wells Fargo would necessarily generate a triad of agreements and, without such documents, particularly the July 2003 Purchase Agreement between WaMu and GSMC, the ownership of the servicing obligations cannot be determined. [4]

---

[4] In a footnote, Glover posits that an email from Erika Larson, a former employee of Avelo Mortgage,

Regarding the specific evidence that was offered by GSMC, Glover suggests that GSMC is withholding the primary documents that are dispositive of the servicing obligations question and that the Murray deposition does not support the proposition that GSMC and Wells Fargo did not sign a separate agreement regarding servicing of her loan. Glover characterizes Murray's deposition as originating from an uninformed representative who merely acknowledged that she could not locate the July 2003 Purchase Agreement or any other document memorializing the servicing arrangement between GSMC and Wells Fargo. Glover also submits that Murray's testimony regarding an email from an employee of Avelo Mortgage that referred to a request for GSMC's approval of the transfer of servicing rights from WaMu to Wells Fargo signals that agreements exist that have not been produced.

Glover's final argument against the sufficiency of the evidence produced by GMC is that it is not probative of the ownership of the servicing rights and thereby fails to demonstrate that ownership of the servicing obligations remains

---

suggests the GSMC was a party to a consent agreement attendant to the transfer of servicing rights between WaMu and Wells. While the email does reference WaMu's request for Goldman's consent, the loans involved appear to be those WaMu sold to Wells Fargo, not GSMC.

unchanged.

At the outset, to the extent that Glover's supposition that documents exist that were not produced is reasoned by her grievance that discovery was incomplete, such debate was forfeited when Glover declined to proceed before the special master and informed the Court on September 24, 2012, that no motions for discovery would be re-filed.

As regards Glover's position that the evidence produced by GSMC is insufficient to support its summary judgment motion, the Court disagrees. While it may be surprising, or in Glover's view, implausible, that GSMC's records do not include the July 2003 Purchase Agreement or that the details of the owner/servicing relationship between GSMC and Wells Fargo are unwritten, the undisputed record evidence demonstrates this to be the case. Since GSMC presented credible evidence that no separate documents between GSMC and Wells Fargo exist, the burden fell to Glover to produce evidence that that would support a contrary finding in her favor. See Ticket Factory, Ltd., Inc. v. Electric Factory Concerts, Civ. A No. 91-4937, 1992 WL 22238, at * 2 (E.D.Pa. February 4,1992) (once summary judgment movant presented evidence that no contracts existed, non-moving party had burden of coming forward with evidence to that support a jury finding in its favor).

Glover's speculations that other documents exist are insufficient to meet her burden in this regard. The uncontroverted evidence before the Court is that the search calculated to unearth the July 2003 Purchase Agreement was unsuccessful and that there are no written agreements between Wells Fargo and GSMC relative to servicing of GSMC loans. It is also undisputed that Wells Fargo is servicing Glover's loan pursuant to the April 1, 2004 Amended and Restated Servicing Agreement between GSMC and WaMu. GSMC has, thus, satisfactorily filled the evidentiary gap in the record concerning the details of the relationship between GSMC and Wells Fargo.

Finally, Glover's assertion that the evidence produced by GSMC does not respond to the Court's previously-expressed concern regarding the deficiency in the record regarding the GSMC/Wells Fargo relationship is incorrect. In adjudicating GSMC's motion to dismiss, the Court applied legal concepts of assignment of contractual rights and duties to the terms of the GSMC/WaMu servicing agreement and concluded that the mortgage servicing duties were not part of the purchase/assignment of the mortgage loans. Now that the record is undisputed that Wells Fargo serviced Glover's loan pursuant to the terms included in the GSMC/WaMu servicing agreement, the Court can conclude that Wells Fargo, and not GSMC, is obligated to Glover to properly

service her loan.

### 3.) Was Wells Fargo acting as GSMC's agent?

Glover's third argument against summary judgment is that, even if Wells Fargo's servicing rights/obligations mimic WaMu's, the GSMC/Wells Fargo legal relationship was altered on January 4, 2008, when Wells Fargo entered into the loan modification agreement with Glover. At this point, Glover urges, Wells Fargo became GSMC's agent.[5]

The April 1, 2004 Amended and Restated Servicing Agreement under which Wells Fargo is servicing Glover's loan dictates that the servicer perform its servicing duties as an "independent contractor." The agreement also authorizes the servicer to "modify any terms of any mortgage loan." Amended and Restated Servicing Agreement, Art. 2. (Sealed Doc. # 139). Thus, the plain language of the agreement governing the GSMC/Wells Fargo relationship authorizes Wells Fargo, as an independent contractor, to enter into loan modification agreements.

Additionally, the law of this case is that GSMC cannot

---

[5]     Glover previously eschewed recovery against GSMC on an agency theory. "Plaintiff's breach of contract claims are not dependent on any agency theories." Pl.'s Brief in Opp. to Motion to Dismiss, p. 6 (Doc. # 155).

be held accountable for wrong doing by its loan servicers. Therefore, Wells Fargo alone is accountable for how it represented itself in the loan modification documents provided to Glover.

Finally, even if the written agreement and the law of the case did not rule, there is no evidence of the principles necessary to prove the agency relationship. In Pennsylvania,[6] the three basic elements of agency are: "the manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking and the understanding of the parties that the principal is to be in control of the undertaking." Basile v. H & R Block, Inc., 563 Pa. 359, 367-368, 761 A.2d 1115, 1120 (Pa. 2000). The burden of establishing an agency relationship rests with the party asserting the relationship. Id.

Here, the written agreement declares that the loan servicer is an independent party authorized to modify the loan and the record is devoid of any evidence that the parties altered the nature of this relationship to one where Wells Fargo

---

[6] The Court renders no opinion on the application of Pennsylvania law on this issue, but notes that the applicable servicing agreement is governed by New York law. April 1 2004 Amended and Restated Servicing Agreement, Section 9.5 (Sealed Doc. # 139)

was acting on behalf of GSMC when it negotiated and entered into the loan modification with Glover. The Court therefore rejects Glover's attempt to re-characterize the GSMC/Wells Fargo legal relationship to agency/principal status.

Considering the undisputed record evidence, GSMC has met its burden of showing the absence of a genuine issue of fact concerning its legal relationship with Wells Fargo, and, in accordance with the law of the case, GSMC should be entitled to judgment as a matter of law. <u>Anderson</u>, 477 U.S. at 247-48.

4. <u>Fed. R Civ. P. 56(d) Relief</u>

It is recommended that Glover's request for Fed. R Civ. P. 56(d) relief be denied for the reasons set forth in this Court's Memorandum Order filed on December 12, 2012 (Doc. # 519).

D. <u>Conclusion</u>

For the reasons set out in this Report and Recommendation, it is respectfully recommended that GSMC's motion for summary judgment (Doc. # 474) be granted.

It is further recommended that Plaintiff's request for Fed. R Civ. P. 56(d) relief (Sealed Doc. # 490) be denied.

Within the time limits set forth in the attached notice of electronic filing, any party may serve and file

written objections to the Report and Recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of the objections to respond thereto. Failure to file timely objections may constitute waiver of any appellate rights.

Dated: January 2, 2013     Respectfully submitted,


                                s/Robert C. Mitchell
                                Robert C. Mitchell
                                United States Magistrate Judge