IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MARY E. GLOVER,                         )
individually and on behalf              )
of other similarly situated             )
former and current                      )
homeowners in Pennsylvania,             )
                                        )
                Plaintiff,              )
                                        )    Civil No. 08-990
            v.                          )
                                        )
MARK J. UDREN, UDREN LAW                )
OFFICES, P.C., WELLS FARGO              )
HOME MORTGAGE, GOLDMAN                   )
SACHS MORTGAGE COMPANY                   )
                                        )
                Defendants.             )

## REPORT AND RECOMMENDATION

**REPORT**

### I.    INTRODUCTION

Pending before the Court is Plaintiff's, Mary E. Glover's, Motion for Class Certification. [ECF No. 483]. For the reasons that follow, it is respectfully recommended that Plaintiff's Motion to Certify Class be denied.

### II.    BACKGROUND

Due to the protracted state of this litigation[1] the Court will only discuss the facts and procedural history necessary for the disposition of the present motion.

#### a.    Factual Background

On August 2, 2002, Plaintiff executed a promissory note and mortgage with Washington

---

[1] The case was removed to this Court on July 14, 2008 and as of the present date, the current document number on CM/ECF is #596.

Mutual ("WaMu"), borrowing approximately $9,997 secured by her residential property. Sec. Am. Compl. [ECF No. 109] at ¶¶ 10-11. Payments made by Plaintiff under the mortgage were to be applied as follows:

> First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

> Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

> Third, to interest due under the Note;

> Fourth, to amortization of the principal of the Note; and

> Fifth, to late charges due under the Note.

Pl.'s Br. in Supp. of Mot. for Class Cert. [ECF No. 484] at 7. Therefore, under the Mortgage, WaMu was to apply Plaintiff's payments first to insurance, taxes, interest, principal and then to late charges.

Subsequently, about a year after Plaintiff entered into her mortgage, on or about July 29, 2003, WaMu sold its ownership interest in Plaintiff's note and mortgage to Goldman Sachs Mortgage Company, ("GSMC") but continued to service the loan pursuant to a servicing agreement entered into with GSMC. Sec. Am. Compl. [ECF No. 109] at ¶ 81. In March 2005, Plaintiff defaulted on the loan. Plaintiff then applied for forbearance. *Id.* at ¶15. However, although Plaintiff claims that one was negotiated, the forbearance agreement was never executed. Plaintiff alleges that under the forbearance agreement, WaMu agreed to postpone Plaintiff's payments due in December 2005, January 2006, February 2006, and March 2006 and agreed to further evaluate Plaintiff's application for financial assistance in April 2006, but WaMu Home Loans "did not honor WaMu Bank's forbearance agreement . . . and notified [Plaintiff] that her

application for a loan [forbearance] was denied." *Id.* at ¶ 16. Defendant alleges that Plaintiff's application for forbearance was denied because she failed to remit a payment required to complete the loan modification and never cured her default. Def.'s Br. in Resp. to Pl.'s Mot. for Class Cert. [ECF No. 487] at 2. Regardless, after denying Plaintiff's application for forbearance, WaMu accelerated the entire unpaid principal balance due under the mortgage. Pl.'s Br. in Supp. of Mot. for Class Cert. [ECF No. 484] at 9.[2]

On April 10, 2006, The Udren Law Office, P.C., acting as counsel for WaMu, initiated a foreclosure action against Plaintiff in the Allegheny County Court of Common Pleas. Sec. Am. Compl. [ECF No. 109] at ¶¶ 17-18. The foreclosure complaint asserted an aggregate claim for $12,652.36. Plaintiff alleges that this amount "included attorney's fees of $1,250.00; an amount arrived at on either a flat rate or percentage basis[,]" and the charges equaled approximately 25% of the mortgage amount. Pl.'s Br. in Supp. of Mot. for Class Cert. [ECF No. 484] at 9. Plaintiff claims that the attorney's fees asserted on the foreclosure complaint were illegal because they were "calculated without reference to the work actually done [and this] was the universal practice of defendants and their debt collector law firms." *Id.*

In June 2009, Plaintiff and WaMu negotiated a Loan Modification Agreement, with WaMu acting on behalf of GSMC. Plaintiff alleges that WaMu sent her a letter with the Loan Modification Agreement that was unclear because it requested that she pay $3,696 for "foreclosure fees & costs" while simultaneously requesting a payment "in the amount of $0.00." *Id.* at ¶ 29-30. Plaintiff did not remit any payment that WaMu allegedly requested. *Id.* at ¶ 31.

---

[2]    The mortgage agreement provided grounds for acceleration of debt. The terms included: "(a) Default. Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if: (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument." Def.'s Br. in Resp. to Pl.'s Mot. for Class Cert. [ECF No. 487] at 48.

Defendant alleges that because Plaintiff did not remit a check of $3,696, WaMu did not accept the Loan Modification Agreement. *Id.* WaMu then applied all subsequent loan payments that Plaintiff made to the arrearage accumulated during the time Plaintiff failed to make payments, and did not apply the payments to her principal, interest or escrow which plaintiff alleges is in violation of the mortgage agreement. *Id.* at ¶ 34.

On or about December 1, 2006, WaMu transferred its servicing rights of Plaintiff's mortgage to Wells Fargo. *Id.* at ¶ 36. Wells Fargo assumed WaMu's obligations under the servicing agreement between GSMC and WaMu. The servicing agreement governed the manner Wells Fargo could service Plaintiff's mortgage, under what circumstances Wells Fargo could execute a loan modification agreement on behalf of GSMC and how Wells Fargo was compensated as a servicer. Plaintiff alleges that after Wells Fargo became the servicer, it "made a comparatively good faith attempt to straighten out WaMu's mess [i.e., the alleged misapplication of payments and allegedly illegally charged attorney's fees from the foreclosure proceedings] and corrected a multitude of mistakes and significantly reduced the amount that WaMu claimed [Plaintiff] actually owed." *Id.* at ¶¶ 9-10. In fact, on or about January 24, 2007, Wells Fargo proposed a Loan Modification Agreement "wherein it further reduced the amounts that WaMu had claimed was due and owing" in the foreclosure complaint. Pl.'s Br. in Supp. of Mot. for Class Cert. [ECF No. 484] at 10; *see* 1/24/2007 Wells Fargo Letter and Proposed Loan Modification Agreement [ECF 109-17]. Nevertheless, Plaintiff claims that this "reduced amount was illegal because it included, inter alia, $1,571.04 for 'Corp Recov/Title/Mod Fees/Atty/FC/BPO/Appraisal[,]'" and was based off of the attorney's fees charged by WaMu through its debt collector The Udren Law Offices for the foreclosure proceedings. Pl.'s Br. in Supp. of Mot. for Class Cert. [ECF No. 484] at 10.

On or about January 4, 2008, Plaintiff and Wells Fargo entered into a Loan Modification Agreement that increased Plaintiff's unpaid principal from $9,508.36 to $12,152.02, increased her monthly principal and interest payments from $67.36 to $81.87, and extended the repayment period by six years. *See* Sec. Am. Compl. [ECF No. 109] at ¶ 52; 1/4/2008 Wells Fargo Letter and Loan Modification Agreement [ECF No. 109-19]. The new $12,152.02 principal balance included an amount of $1,859.32 for "Escrow" and $1,571.02 for "Corp Recov/Title/Mod Fees/Atty/FC/BPO/Appraisal." *Id.* Wells Fargo claims it later reduced the amount owed by issuing Plaintiff a refund check in the amount of $1,169.45. Pl.'s Br. in Supp. of Mot. for Class Cert. [ECF No. 484] at ¶ 11; 2008 Check to Plaintiff from Wells Fargo [ECF No. 48-25].

Plaintiff alleges that while Wells Fargo acted as the servicer of her mortgage, they "failed to honor her mortgage and/or Loan Modification Agreement. . . . [Specifically, Plaintiff alleges that] Wells Fargo failed to correctly apply many of her monthly payments during the time period of June 20, 2006 to March 4, 2008 to her escrow, interest and her principal balance accounts . . . [and] overstated her unpaid principal balance by $1,289.00, in part, as a result of misallocating her payments to non-interest bearing suspense and other unauthorized accounts." Pl.'s Br. in Supp. of Mot. for Class Cert. [ECF No. 484] at 11. On March 25, 2009, the Foreclosure Complaint filed in the Allegheny Court of Common Pleas was withdrawn. Sec. Am. Compl. [ECF No. 109] at ¶ 58.

In support of her class action, Plaintiff claims that the injuries suffered by her were "the direct result of flawed practices applied universally" such that it "demonstrate[s] the need for a class action[.]" Pl.'s Br. in Supp. of Mot. for Class Cert. [ECF No. 484] at 11. Four claims remain against Wells Fargo for class determination:[3] (1) whether Wells Fargo breached the loan

---

[3]    All other defendants have been dismissed from the suit with prejudice. *See* Order of 4/19/2011 [ECF No. 220] adopting Report and Recommendation [ECF No. 166] (dismissing with prejudice claims against Wells Fargo

modification agreement by overcharging and misallocating payments made by Plaintiff; (2) whether Wells Fargo was unjustly enriched with respect to the improper handling of escrow charges and failure to conform to RESPA allegations; (3) whether Wells Fargo violated the LIPL provisions under 41 P.S. § 502 by assessing unauthorized attorney's fees and costs; and (4) whether Wells Fargo violated 73 P.S. §201-9.2(xxi) of the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), also referred to as UTPCPL's "catch-all" provision, by allegedly misrepresenting the amounts due under the loan modification agreement through deceptive conduct. For ease of reference, and because the Court is not making a determination of the validity of these claims, they will be referred to as: (1) breach of contract; (2) unjust enrichment; (3) LIPL violation; and (4) UTPCPL violation.

Plaintiff filed her Second Amended Class Action Complaint on June 9, 2010 and defines the class as follows:

> [A]ll former or current homeowners who obtained residential financing from WaMu Bank and/or WaMu Home Loans, secured by a first mortgage on property located within the Commonwealth of Pennsylvania (sometimes referred to as "Homeowners"). This class includes Homeowners who made monthly payments to WaMu Bank, Washington Mutual Home Loans, or Defendant Wells Fargo on or after July 29, 2003 where:
>
> a.      A mortgagee/mortgagor relationship existed between WaMu Bank and/or WaMu Mutual Home Loans and the Homeowner; and
>
> b.      That relationship arose out of a first mortgage on residential property in Pennsylvania; and

---

for breach of contract for unauthorized collection of escrow charges, breach of contract for escrow contractual RESPA provisions in the mortgage under 24 C.F.R. § 3500(f)(2)(i), breach of contract for attorney's fees under 41 P.S. §406(2), Fair Debt Collection Practices Violation under 15 U.S.C. § 1692, violations of the Unfair Trade Practices and Consumer Protection Law under 73 P.S. § 201.9.2(v), violations of the Fair Credit Extension Uniformity Act under 73 P.S. § 2270.4(a)); Order of 6/29/2013 [ECF No. 462] (granting Fed. R. Civ. P. 54 certification to the United States Court of Appeals for the Third Circuit for claims against Mark J. Udren and Udren Law Offices, P.C.); Order of 3/5/2013 [ECF No. 565] adopting Report and Recommendation [ECF No. 536] (granting summary judgment as to all claims in favor of Goldman Sachs).

        c.      The Notes or Mortgages serviced by WaMu Home Loans and/or WaMu Bank were thereafter assigned to Defendant Wells Fargo; and

        d.      The mortgagor made one or more payments to Wells Fargo for his or her loan.

Sec. Am. Compl. [ECF No. 109] at ¶ 2. A class certification hearing was held on March 6, 2013. *See* 3/6/2013 Minute Entry [ECF No. 566].

### III. STANDARD OF REVIEW

The party seeking to represent the class "must affirmatively demonstrate his compliance" with Rule 23. *Wal-Mart Stores, Inc. v. Dukes*, 562 U.S. --, -- 131 S.Ct. 2541, 2551 (June 20, 2011). *See also Comcast v. Behrend*, -- U.S. --, -- 133 S.Ct. 1426, 1432 (March 27, 2013). Rule 23 "does not set for a mere pleading standard[,]" but "[r]ather, a party must not only 'be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact,' typicality of claims or defenses, and adequacy of representation[.]" *Comcast*, 133 S.Ct. at 1432 (quoting *Wal-Mart*, 131 S.Ct. at 2551). "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent – but only to the extent – that they are relevant to determining whether Rule 23 prerequisites for class certification are satisfied." *Agmen Inc. v. Connecticut Retirement Plans and Trust Funds*, - - U.S. - -, - - 133 S.Ct. 1184, 1194-95 (Feb. 27, 2013).

To determine whether class certification is proper under Rule 23, "the district court must make whatever factual and legal inquiries are necessary and must consider all relevant evidence and arguments presented by the parties." *In re Hydrogen Peroxide Antitrust Litig*., 552 F.3d 305, 307 (3d Cir. 2008). This requires the putative class representative to make more than a "threshold showing" that requirements of Rule 23 are satisfied. *Id*. Where the merits of the claim and a requirement for class certification coincide, the court may resolve factual disputes to

determine whether the proposed class should be certified. *Id*. at 316. "Factual determinations supporting Rule 23 findings must be made by a preponderance of the evidence" by the party seeking class certification. *Id*. at 307. In making factual determinations, "[i]t may be necessary for the court to probe behind the pleadings before coming to rest on the certification question, and . . . certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Comcast*, 133 S.Ct. at 1432. "A party's assurance to the court that it intends or plans to meet the requirements is insufficient." *In re Hydrogen Peroxide Antitrust Litig*., 552 F.3d at 318 (citations omitted). "[W]here the court finds, on the basis of substantial evidence . . . that there are serious problems now appearing, it should not certify the class merely on the assurance of counsel that some solution will be found." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 191 (3d Cir. 2001) (quoting *Windham v. Am. Brands, Inc.*, 565 F.2d 59, 70 (4th Cir. 1977)). "Although the district court's findings for the purpose of class certification are conclusive on that topic, they do not bind the fact-finder on the merits." *In re Hydrogen Peroxide Antitrust Litig*., 552 F.3d at 318.

## IV.  ANALYSIS

To demonstrate that one or more members of a class may bring suit as representative parties on behalf of all members, the class must meet the four-part test set forth in Federal Rule of Civil Procedure 23:

> (1)  the class [must be] so numerous that joinder of all members is impracticable;
>
> (2)  there are questions of law or fact common to the class;
>
> (3)  the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4)  the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a)(1)-(4). These factors are referred to as numerosity, commonality, typicality and adequacy.

In addition to proving the factors set forth in Rule 23(a), the putative class representative has the burden of satisfying at least one of the provisions of Rule 23(b) through "evidentiary proof." *Comcast*, 133 S.Ct. at 1426. Plaintiff moves for class certification for all current homeowners under Rule 23(b)(2) and for all current or former homeowners under Rule 23(b)(3). Rule 23(b)(2) states that a class action may be maintained if "the party opposing the class has acted or refused to act on the grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2). Rule 23(b)(3) permits certification if:

> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> (A) the class members' interest in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D). The requirements of Rule 23(b)(3) are commonly referred to as the predominance and superiority factors. *Wal-Mart*, 131 S.Ct. 2558-59.

Wells Fargo argues that Plaintiff has failed to meet each factor under Rules 23(a), 23(b)(2) and 23(b)(3) and her motion for class certification should be denied. The Court agrees with Wells Fargo and will discuss each factor seriatim.

    *a. Class Definition*

As a prerequisite to a Rule 23 analysis, "the Court first must consider whether a precisely defined class exists and whether the named plaintiffs are members of the proposed class." *Gates v. Rohm and Haas, Co*., 265 F.R.D. 208, 214 (E.D.Pa. 2010) (citing *East Texas Motor Freight*, 431 U.S. 395, 403 (1977)). This is generally referred to as the "ascertainability" factor. *See Marcus v. BMW of North America*, 687 F.3d 583, 596 (3d Cir. 2012). In making this determination, the court considers: "(1) whether there is a particular group that was harmed during a particular time frame, in a particular location, in a particular way; and (2) whether class membership has been defined in some objective manner." *Gates*, 265 F.R.D. at 214 (citations omitted).

The class will generally be definite so long as it is defined "in terms of objective criteria, such as the defendants' conduct as opposed to the state of mind of the parties." *Id*. at 214 (quoting *Bentley v. Honeywell Int'l Inc*., 223 F.R.D. 471, 477 (S.D.Ohio 2004)). "If class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials', then a class action is inappropriate." *Marcus*, 687 F.3d at 592. For example, '[s]ome courts have held that where nothing in the company databases shows or could show whether individuals should be included in the proposed class, the class definition fails." *Id*. at 592 (citations omitted). The ascertainability requirement serves as a gatekeeper to the Rule 23 by serving "several important objectives. First, it eliminates 'serious administrative burdens that are incongruous with the efficiencies expected in a class action' by insisting on the easy identification of class members." *Id*. at 593 (quoting *Sanneman v. Chrysler Corp*., 191 F.R.D. 441, 446 (E.D.Pa. 2000)). "Second, it protect[s] absent class members by facilitating the 'best notice practicable' under Rule 23(c)(2) in a Rule 23(b)(3) action." *Marcus*, 687 F.3d at 593. 'Third, it protects defendants by ensuring that those persons who will be bound by the final

judgment are clearly identifiable." *Id.*

The proposed class, as defined, is sufficiently ascertainable. Plaintiff has requested and Wells Fargo has produced database spreadsheets that were compiled using search terms specific to the defined class. Moreover, Wells Fargo has not disputed the ascertainability of the class as it is defined; therefore the Court finds that the class is ascertainable.

### b. *Inapplicability of Rule 23(b)(2)*

Plaintiff is not entitled to certification under Rule 23(b)(2). While Plaintiff seeks "declaratory judgments and injunctive relief" for the remaining claims against Wells Fargo, she simultaneously admits she is not entitled to such relief by stating: "Plaintiffs recognize that they are not entitled to injunctive relief under most claims[,]" and "they may not be entitled to equitable relief under their statutory claims and are not entitled to relief under their contractual claims." Pl.'s Br. in Supp. of Mot. for Class Cert. [ECF No. 484] at 51, n. 18, 52. Notwithstanding her assertion, she argues that Rule 23(b)(2) certification applies because "Plaintiffs are entitled to the equitable relief of an accounting of their mortgage records to determine their damages." *Id.* at 52.

Plaintiff's argument entirely ignores Supreme Court precedent on the subject of Rule 23(b)(2) certification. Under *Wal-Mart,* Rule 23(b)(2) only applies "when a single injunction or declaratory judgment would provide relief to each member of the class . . . **[not] when each class member would be entitled to an individualized award of monetary damages**." 131 S.Ct. at 2557 (emphasis added). Plaintiff's argument for relief is admittedly based upon monetary damages. An accounting is only sought so that individual monetary relief can be obtained. Moreover, Rule 23(b)(2) certification is "inappropriate where many putative class members have nothing to gain from an injunction, and the declaratory relief they seek serves

only to facilitate the award of damages." *Allen v. Holiday Universal*, 249 F.R.D. 166, 190 (E.D.Pa. 2008). Plaintiff admits the injunctive relief serves the sole purpose of awarding damages to the putative class members. Monetary claims therefore predominate this class action, and certification is inappropriate under Rule 23(b)(2).

### c. Rule 23(a)(1): Numerosity

In support of her claim that numerosity is satisfied, Plaintiff offers a declaration made by a former WaMu employee stating that the class exceeds 60,000 people. Plaintiff contends that the number of people in the class would "present a substantial burden on the courts; individual claimants have little economic incentive to bring separate claims; and most class members are likely unaware that their rights have been violated[,]" and therefore numerosity is satisfied. Pl.'s Br. in Supp. of Mot. for Class Cert. [ECF No. 484] at 24. At the class certification hearing, Plaintiff also entered into evidence spreadsheets of the purported class members that Wells Fargo produced based upon search terms supplied by Plaintiff of Wells Fargo's database. *See e.g.*, Tr. [ECF No. 594] at 46-48. The search included the following terms consistent with the defined class:

> (1) all borrowers who obtained a first mortgage, (2) on residential property located in Pennsylvania, (3) where the servicing of the loan was transferred from Washington Mutual to Wells Fargo; (4) and the borrower made at least one payment to Wells Fargo, (5) from July 29, 2003 until the present.

Def.'s Br. in Resp. to Pl.'s Mot. for Class Cert. [ECF No. 487] at 15. The search results identified a total of approximately 88,874 borrowers. *Id.* Plaintiff alleges that out of the 88,874 borrowers, approximately 4,393 were subject to loan modification agreements in "Pennsylvania for first lien borrowers, residential mortgages." Tr. [ECF No. 594] at 47. Further, she argues that as for the attorney's fees imposed, the spreadsheets were sorted to show which of the loans were

assessed "corporate advances . . . called RECO" which Plaintiff alleges "are put into the standard loan modification reinstatement documents" and RECO includes "costs and fees related to work accomplished by outside attorneys, for inspections, or from other Wells Fargo home mortgage vendors." *Id.* at 79-80.

Defendant contends that Plaintiff cannot satisfy the numerosity requirement for two reasons. First, the declaration by a former WaMu employee submitted by Plaintiff which declares the putative class consists of over 60,000 members is not supported by sufficient evidence because it does not state how many of the putative class members entered into a loan modification agreement with Wells Fargo, a factor necessary to establish a breach of the loan modification agreement; it does not state how many putative class members paid attorney's fees in foreclosure proceedings, necessary to establish numerosity on the LIPL claim; and states that the escrow payments and/or foreclosure fees were stated to have been paid to WaMu, and not Wells Fargo. Def.'s Br. in Resp. to Pl.'s Mot. for Class Cert. [ECF No. 487] at 15. Secondly, Defendant contends that numerosity has not been established because the spreadsheets produced using Plaintiff's search terms "do not establish which borrowers entered into loan modification agreements like the one that plaintiff executed with Wells Fargo, how many borrowers went into foreclosure and paid attorney's fees to Wells Fargo allegedly in violation of LIPL or how many borrowers allegedly had their loan payments misapplied[.]" *Id*. at 16.

For a finding of numerosity, no "magic number" exists. *Stewert v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001). The Court of Appeals for the Third Circuit has noted that classes of forty (40) or more suffices. *Id*. Additionally, to establish numerosity, the named class must be "sufficiently identifiable without being overly broad" to determine whether a putative class member has been subject to the alleged harm. *Mueller v. CBS, Inc*., 200 F.R.D. 227, 233

(W.D.Pa. 2001). "The proposed class may not be amorphous, vague, or indeterminate." *Id*. at 233 (citations and internal quotations omitted).

To make this showing, the plaintiff need not present "direct evidence of the exact number and identities of class members. But in the absence of direct evidence, a plaintiff must show sufficient circumstantial evidence specific to the products, problems, parties, and geographic areas actually covered by the class definition to allow a court to make a factual finding." *Marcus*, 687 F.3d at 596. In this situation, a court may "forgo precise calculations and exact numbers" and rely on its "common sense" that numerosity is met. *Id*. at 597 (citing *Lloyd v. City of Phila*., 121 F.R.D. 246, 249 (E.D.Pa. 1988) (numerosity was not satisfied where evidence suggested only four plaintiffs met the defined class where plaintiff speculated class exceeded 10,000).

In a case substantially similar to the case at bar, the court determined that numerosity had not been established. *Eversole v. EMC Mortg. Corp.*, 2007 WL 1558512 (E.D.Ky. May 29, 2007). In *Eversole*, the plaintiff obtained a loan secured by her personal residence from The CIT Group/Consumers Finance, Inc. ("CIT") that later transferred the servicing rights to EMC Mortgage Company ("EMC"). *Id*. at *1. Although CIT was to inform plaintiff to make all future payments to EMC, it did not, and Plaintiff continued to make her payments to CIT. *Id*. CIT failed to timely forward the payments to EMC, resulting in a missed payment and subsequent misapplication of plaintiff's payments under the loan agreement. *Id*. Plaintiff sought to certify a class defined as: "Since January 2001, all individuals: (1) who ha[d been] given mortgages on residential property located in Kentucky, (2) whose mortgage loan accounts relating to such property EMC has serviced, and (3) whose mortgage loan accounts EMC failed to post or credit with timely mortgage payments to reduce principal and pay interest in accordance with the terms of their mortgage loans." *Id*. While plaintiff offered evidence that 6,100 putative members fell

into the class, it "fail[ed] to show that there was even one mortgage where EMC did anything improper. . . . With respect to the proposed class, the evidence [did] not show that even one timely mortgage payment was posted or credited later than the date it was received by EMC, much less that the mortgagor suffered a loss and EMC gained an improper benefit therefrom." *Id*. at *6.

Here, in support of numerosity, Plaintiff relies upon an eight-paragraph declaration made by Jei Nagamatsu, a former Washington Mutual employee that the putative class consists of more than 60,000 members to support a finding of numerosity. The declaration was made on July 14, 2008 and was originally submitted to support removal to this Court, and to support a wholly different class.[4] *See* Nagamatsu Declaration [ECF No. 1-6] at ¶ 6. Moreover, the declaration was made three years before Plaintiff filed the instant motion for class certification. The declaration summarily states:

> 6.     The putative class consists of in excess of 60,000 members.
> 7.     During the alleged class period, WaMu collected in excess of $20,000,000 in escrow payments with respect to property located in Pennsylvania.
> 8.     During the alleged class period, WaMu collected in excess of $7,000,000 in foreclosure fees with respect to property located in Pennsylvania.

*Id*. at ¶¶ 6-8. This declaration offers no factual basis to establish numerosity and is merely conclusory. It does not state how many persons entered into a loan modification agreement with Wells Fargo, necessary to establish the breach of contract claim, or state whether any of the

---

[4]     Plaintiff's first defined the class under Pennsylvania law as: "all former or current homeowners who obtained residential financing from Washington Mutual, secured by a first mortgage on property located within the Commonwealth of Pennsylvania (sometimes referred to as "Homeowners"). This class includes Homeowners who made monthly payments to Washington Mutual or Wells Fargo within the six-year time period preceding the filing of this Complaint, including: (a) Former and current homeowners whose notes or mortgages were assigned by Washington Mutual to Wells Fargo; and (b) Former and current homeowners whose notes and mortgages were serviced by Wells Fargo at Washington Mutual's request; and (c) Former and current homeowners that were named as defendants in foreclosure actions filed by Udren Law Officers and/or attorneys of that lawfirm (sic) on behalf of Washington Mutual." Class Action Compl. [ECF No. 1-2] at ¶ 72.

putative class members paid attorney's fees necessary to establish the LIPL violation. The class is overly broad in that it includes people who have not been, and will not be harmed by Wells Fargo. *See Kemblesville HHMO Ctr., LLC v. Landhops Realty Co.*, 2011 WL 3240779, at *7 (E.D.Pa. July 28, 2011). Tellingly, the declaration conflicts with the evidence based upon the spreadsheets submitted by the Plaintiff at the class certification hearing. In comparison with the spreadsheets, the declaration narrows the class by approximately 28,000 putative members. Although Plaintiff alleges that the spreadsheets show that the putative class members are in excess of 80,000, the evidence fails to show that Wells Fargo did anything improper with even one loan modification agreement, collected attorney's fees, or overcharged or misrepresented the amounts homeowners owed on their mortgage. Plaintiff would have the Court assume that due to unproven "standardized procedures" all members who entered into a Loan Modification Agreement had their payments misapplied, and were assessed and paid unreasonable and unincurred attorney's fees. The spreadsheets fail to show that Wells Fargo misallocated one payment or that the putative class member paid any attorney's fees. Plaintiff fails to show conclusive evidence of her contentions. The fact that putative class members entered into a loan modification agreement is not conclusive of the complained of actions. This evidence, without more, does not satisfy numerosity.

Plaintiff spent a considerable amount of time during the pendency of this case, specifically, in her briefing and at the class certification hearing, complaining that she has not had adequate time to conduct meaningful discovery and any attempts to conduct discovery were thwarted and "stonewalled" by Wells Fargo. Contrary to Plaintiff's assertions, she has had an extensive amount of time and plentiful opportunities to conduct discovery to support and

supplement her present motion for certification, but has failed to do so.[5] Specifically, suit was removed to this Court on July 14, 2008. Discovery closed on September 24, 2012 after Plaintiff refused to proceed before a special master for discovery disputes. *See* Memorandum Order [ECF No. 537] at 5. This gave Plaintiff approximately four years and two months to conduct discovery to support class certification. While it is noted that Wells Fargo produced the database spreadsheets after Plaintiff filed her motion for class certification, Plaintiff did not file a reply, or move to supplement her motion to include the new information. Instead, she filed a motion to limit the class and offered a newly proposed class, which was denied as untimely because the public documents that purportedly supported her revised class definition were available well before the deadline to file her motion for class certification. *See* Memorandum Order [ECF No. 537] at 5. With this backdrop, Plaintiff has had ample time to conduct discovery, but the evidence of record is insufficient to find that Plaintiff's proposed class satisfies the numerosity requirement. *See Kemblesville HHMO Ctr., LLC,* 2011 WL 3240779, at *7 (E.D.Pa. July 28, 2011) (plaintiff's argument that numerosity was would be shown after additional discovery was "unavailing" where plaintiff had "many months" to produce evidence supporting their motion for class certification); *Eversole*, 2007 WL 1558512, at *6 (fourteen months for class discovery was considered a "substantial period of time"); *Smith v. First Century Bank*, 2005 WL 1840251, at *7 (E.D.Tenn. Aug. 3, 2005) (proof of only bank's total number of customers, but not how many actually suffered damages from improper transactions, was too speculative to satisfy numerosity). While the evidence illustrates that thousands of people fit inside the putative class, it fails to show that any class member actually suffered from any of Wells Fargo's alleged conduct. Accordingly, the Court finds that Plaintiff has failed to show by a preponderance of the

---

[5]     At the class certification hearing, Wells Fargo commented that Plaintiff has not taken any depositions. *See* Tr. [ECF No. 594] at 66. Plaintiff did not contest this, nor did she ever offer deposition testimony with regard to any motion that has been filed in this action thus far.

evidence that numerosity of the putative class has been satisfied.

### d. Rule 23(a)(2): Commonality

Commonality mandates "the plaintiff . . . demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart*, 131 S.Ct. at 2551. The injury alleged "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* "What matters to class certification . . . is not the raising of common questions – even in droves – but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id.* (citations and internal quotation marks omitted) (emphasis in original). "[T]he existence of individualized issues in a proposed class action does not per se defeat commonality[,]" *Brooks v. Educators Mut. Life Ins. Co.*, 206 F.R.D. 96, 101 (E.D.Pa. 2002) (citing *Johnston v. HBO Film Mgmt.,* 265 F.3d 178, 191 (3d Cir. 2001)), and the threshold for commonality is low. *Georgine v. Achem Prods., Inc.*, 83 F.3d 610, 624 (3d Cir. 1996), *aff'd sub nom Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997). However, "where an action is to proceed under Rule 23(b)(3), the commonality requirement is subsumed by the predominance requirement." *Danvers Motor Co., Inc. v. Ford Motor Co*., 543 F.3d 141, 148 (3d Cir. 2008) (citation omitted). Therefore, because Plaintiff seeks certification under Rule 23(b)(3), which compels that common issues predominant, a more stringent requirement, the Court will discuss the issue of commonality in tandem with the requirements of Rule 23(b)(3).

### e. Rule 23(a)(3): Typicality

To satisfy typicality, the Court must assess "whether 'the named plaintiff[s'] individual

circumstances are markedly different or . . . the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based.'" *Johnston,* 265 F.3d at 184 (quoting *Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3d Cir. 1985)). Typicality certifies that the interests of the putative class members and the class representative "are aligned 'so that the latter will work to benefit the entire class through the pursuit of [her] own goals.'" *Newton,* 259 F.3d at 183 (quoting *Barnes v. American Tobacco Co.*, 161 F.3d 127, 141 (3d Cir. 1998)). Generally, typicality will be satisfied "when the named plaintiffs and the proposed class members 'challenge [ ] the same unlawful conduct . . . . Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." *Thomas v. SmithKline Beecham Corp.*, 201 F.R.D. 386, 394 (E.D.Pa. 2001) (quoting *Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994)). The typicality requirement ensures "that the class representatives are sufficiently *similar* to the rest of the class – in terms of their legal claims, factual circumstances, and stake in the litigation – so that certifying those individuals to represent the class will be fair to the rest of the proposed class." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 597-98 (3d Cir. 2009) (emphasis in original). Total "factual similarity is not required; just enough factual similarity so that maintaining the class action is reasonably economical and the interests of other class members will be fairly and adequately protected in their absence." *Id.* at 598.

In determining whether a class representative

> is markedly different from the class as a whole, we consider the attributes of the plaintiff, the class as a whole, and the similarity between the plaintiff and the class. . . . This comparative analysis addresses three distinct, though related concerns: (1) the claims of the class representative must be generally the same as those of the class in terms of both (a) the legal theory advanced and (b) the

19

> factual circumstances underlying that theory; (2) the class representative must not be subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation; and (3) the interests and incentives of the representative must be sufficiently aligned with those of the class.

*Marcus*, 687 F.3d at 598 (internal quotations and citations omitted).

Plaintiff argues that typicality is satisfied because "many" of the WaMu loans originating in Pennsylvania, later transferred to Wells Fargo were governmental services entity loans ("GSE") and GSE loans utilized form documents for each jurisdiction, such that the claims of plaintiff would be typical of the putative class's claims. Pl.'s Br. in Supp. of Mot. for Class Cert. [ECF No. 484] at 30. Plaintiff claims that though her loan was "not a GSE loan, it is identical to the GSE mortgages with respect to the relevant contractual provisions[,]" and thus her mortgage is typical of the class. *Id*. at 31.

As a preliminary matter, Plaintiff's circumstances are so factually specific that her claims are not typical of those in the proposed class. Even before Wells Fargo began servicing her loan, she defaulted on the WaMu mortgage, made no payments on the mortgage for over a year, WaMu commenced a foreclosure action that was held in abeyance pending the negotiations of a loan modification agreement, the loan modification agreement was not executed, but she nonetheless made payments under the agreement. After Wells Fargo became the servicer, it "corrected a multitude of mistakes and significantly reduced the amount that WaMu claimed [Plaintiff] actually owed." *Id*. at 10. Plaintiff and Wells Fargo then entered into a loan modification agreement and Wells Fargo refunded Plaintiff in the amount of $1,169.45 from escrow. These circumstances are unique to Plaintiff and render her factual circumstances atypical of the class. However, because the Court must view these factual circumstances in context with the legal theories advanced by the Plaintiff, the Court will discuss each legal theory

remaining against Wells Fargo.

1. Breach of Contract

To maintain a cause of action for breach of contract under Pennsylvania law, the plaintiff must establish: (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract, and (3) damages resulting from the breach. *McShea v. City of Philadelphia*, 995 A.2d 334, 340 (Pa. 2010). If the breach of contract claim "demands an individualized inquiry . . . for each member of the proposed class[,]" it does not satisfy typicality. *Hernandez v. Ashley Furniture Indus., Inc.*, 2013 WL 2245894, at *9 (E.D.Pa. May 22, 2013).

In *Eversole*, the plaintiff sought to certify a class "whose mortgage loan accounts EMC failed to post or credit with timely mortgage payments" and misapplied payments in accordance with the mortgage provisions. 2007 WL 1558512, at *9. The court found that:

> To establish liability, each plaintiff would be required to prove the "terms" of their individual note and mortgage, that they individually made timely payments to EMC, and that EMC's treatment of the timely payments violated the terms of their note and mortgage. Even if Eversole could prove that EMC violated the terms of her note and mortgage, that would not prove that EMC violated anyone else's note and mortgage. . . . [E]ach claim depends on individual interactions with the Defendant. Even if Eversole were to allege and prove that some group of the proposed class had notes and mortgages that were virtually identical, . . . each plaintiff would still need to prove individualized facts regarding the timing of payments made and EMC's handling of each payments to establish liability for any harm to them.

*Id.* Therefore, the court found that the typicality factor was not satisfied. *Id.*

Defendant argues that Plaintiff cannot demonstrate typicality for her breach of contract claim because the mortgage terms are specific to each class member and even if the terms were the same, each class member would have to establish that Wells Fargo breached each provision individually. Def.'s Br. in Resp. to Pl.'s Mot. for Class Cert. [ECF No. 487] at 24. Moreover, the

present class causes a more significant problem than the putative class in *Eversole*, because "each individually negotiated loan modification agreement will be different." *Id*. at 25.

Plaintiff's remaining contract claim is for a breach of the loan modification agreement entered into with Wells Fargo. Plaintiff alleges that Wells Fargo breached the contract by misallocating payments, misusing suspense accounts and/or making unauthorized escrow advances. The defined class is silent as to whether putative class members have executed a loan modification agreement. Under Plaintiff's class scheme, the Court would necessarily have to review each putative class member's loan file, first to determine whether a loan modification agreement contained the same provisions as the purported class and then whether that provision was breached by Wells Fargo by misallocating payments, misusing suspense accounts and/or making unauthorized escrow advances. While Plaintiff relies on the similarities of GSE loans to show typicality, plaintiff's own original loan was not a GSE loan and cannot be typical of the class. Pl.'s Br. in Supp. of Mot. for Class Cert. [ECF No. 484] at 31. Further, Plaintiff admitted that as she gleaned from the spreadsheets produced by Wells Fargo, "there are about four or five different [loan modification agreement] templates that are used." Tr. [ECF No. 594] at 52. This situation demands an individualized inquiry into the existence of a breach of contract for each putative class member to determine whether Plaintiff's loan modification agreement is typical of the class. Even assuming that every loan modification agreement was identical, the court would still need to determine on an individual basis whether the provisions were breached by misallocating the payments, misusing suspense accounts and/or making unauthorized escrow advances. Accordingly, Plaintiff has not satisfied the typicality requirement as to her breach of contract claim.

2.  <u>Unjust Enrichment</u>

To maintain a claim of unjust enrichment, there must be a "benefit[] conferred on the defendant by the plaintiff, appreciation of such benefits by the defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." *Northeast Fence & Iron Works, Inc. v. Murphy Quigley Co., Inc.*, 933 A.2d 664, 668-69 (Pa. Super. Ct. 2007) (quoting *AmeriPro Search, Inc. v. Fleming Steel Co.*, 787 A.2d 988, 991 (Pa.Super.Ct. 2001)); *see also EBC, Inc. v. Clark Bldg. Sys. Inc.*, 68 F.3d 253, 273 (3d Cir. 2010). The critical element is a showing that the defendant may have benefitted in some way from the alleged conduct. *Lackner v. Glosser*, 892 A.2d 21, 34 (Pa.Super.Ct. 2006). *See also Sovereign Bank v. B.J.'s Wholesale Club, Inc.*, 533 F.3d 162, 180-81 (3d Cir. 2008) (applying Pennsylvania law).

"Thus, 'the unjust enrichment claim essentially demands an individualized inquiry, because it requires a showing that the plaintiff performed services in good faith, that the defendant accepted those service, and that plaintiff has a reasonable expectation of compensation." *Hernandez*, 2013 WL 2245894, at *9 (quoting *Masterson v. Federal Express Corp.*, 269 F.R.D. 439, 444 (M.D.Pa. 2010)). *See generally Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1274 (11th Cir.) (claim for unjust enrichment involves an individual inquiry and inappropriate for class treatment); *Mahtani v. Wyeth*, 2011 WL 2609857, at *11 (D.N.J. June 30, 2011) (unjust enrichment inappropriate for class treatment because each putative class member was required to show a conferred benefit); *Bunnion v. Consolidated Rail Corp.*, 1998 WL 372644, at *11 (E.D.Pa. 1998) ("[u]njust enrichment is an equitable doctrine that, in our view, depends upon the analysis of each individual situation.").

Plaintiff's unjust enrichment claim alleges that Wells Fargo "was unjustly enriched when it collected and retained unauthorized fees, costs, and expenses from" the purported class

members for breach of contract for the loan modification agreement, improper handling of escrow charges and failure to conform to RESPA. Defendant argues that Plaintiff cannot satisfy typicality as to her unjust enrichment claim because such a claim is equitable in nature and requires an analysis into each individual loan modification agreement, note, mortgage and loan history such that Plaintiff's claims cannot be typical of the class. Def.'s Br. in Resp. to Pl.'s Mot. for Class Cert. [ECF No. 487] at 26. Further, Defendant claims that because the unjust enrichment claims originate from escrow payments, the court will have to make an individual determination of whether the putative class member even has an escrow account. *Id.*

The Court agrees with Wells Fargo as to the unjust enrichment claim. Like Plaintiff's breach of contract claim, Plaintiff's claim for unjust enrichment also involves an individualized inquiry that negates typicality. Whether Wells Fargo improperly handled escrow funds, and failed to conform to RESPA created a benefit retained by Wells Fargo, and whether it was inequitable requires an individualized analysis into each purported class member's loan file such that the facts underlying Plaintiff's claim would not be typical of the class. Moreover, it is alleged that Plaintiff received a refund check from Wells Fargo, which further complicates typicality because it could be found that Wells Fargo did not inequitably retain a benefit which could foreclose absent members' claims. As such, plaintiff has failed to show that her unjust enrichment claim is typical of the proposed class, and has not satisfied the typicality requirement as to this claim.

### 3. Pennsylvania's Loan Interest Protection Law ("LIPL")

41 P.S. § 502 allows recover for usury and excess charges and provides:

> A person who has paid a rate of interest for the loan or use of money at a rate in excess of that provided for by this act or otherwise by law or has paid charges prohibited or in excess of those allowed by this act or otherwise by law may recover triple

the amount of such excess interest or charges in a suit at law against the person who has collected such excess interest or charges . . . ."

41 P.S. § 502.

Defendant contends that LIPL will not apply to many of the putative class members because it applies only to "residential mortgages" which apply only to mortgages on property in value of $217,873 or less,[6] and therefore the Court will have to conduct an individual inquiry as to whether the putative class member has a "residential loan." Second, Defendant argues that to violate LIPL, the Court will have to determine whether Wells Fargo actually collected any attorney's fees that were in violation of LIPL, i.e., that the fees were unincurred or unreasonable. Def.'s Br. in Resp. to Pl.'s Mot. for Class Cert. [ECF No. 487] at 27-28.

Plaintiff's LIPL claim is not typical of the class. To be found liable under LIPL, the attorney's fees imposed must have been unincurred or unreasonable. The class, as proposed, is silent as to whether the mortgages were foreclosed upon, which is atypical of Plaintiff's situation. The foreclosure proceeding is what prompted the assessment of, among other miscellaneous costs, attorney's fees onto the balance of Plaintiff's mortgage. Furthermore, the class is also silent as to whether attorney's fees were assessed, which is also atypical of Plaintiff's situation. Plaintiff has offered no evidence that attorney's fees are automatically assessed once a foreclosure proceeding is instituted. Even if Plaintiff were to prove that every class member was foreclosed upon and automatically assessed unreasonable or unincurred attorney's fees, Plaintiff would still need to prove that the class members paid the fee, just as she claims she did. The class is silent as to the payment of attorney's fees, but only requires a payment be made. This renders Plaintiff's LIPL claim atypical of the class. Plaintiff's claims

---

[6]     Under LIPL, residential mortgages are defined as "obligation[s] to pay a sum of money in an original bona fide principal amount of the base figure or less." 41 P.S. § 101. The base figure is currently set at $217, 873 and is annually adjusted for inflation. *Id.*

under the LIPL are too individualized that it would not benefit the entire class because there is no factual similarity between Plaintiff and the members of the class who have not been foreclosed upon or have not paid attorney's fees.

4. Unfair Trade Practices and Consumer Protection Law ("UTPCPL")

The catch-all provision of the Unfair Trade Practices and Consumer Protection Law ("UTPCPL") prohibits "fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding." 73 P.S. § 201-9.2. To succeed on a claim under the catch-all provision, "a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance." *Cohen v. Chicago Title Ins. Co.*, 2013 WL 842706, at *3 (E.D.Pa. March 7, 2013) (quoting *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 438 (Pa. 2004)).

Plaintiff alleges that Wells Fargo "violated the UTPCPL by misrepresenting the amount that Homeowner's owed . . . and Homeowners paid the misrepresented and overcharged amounts in whole or part." Sec. Am. Compl. [ECF No. 109] at ¶¶ 213-14.

Plaintiff's claim is atypical of that of the class for the same aforementioned reasons. Because the class is silent as to which members entered into loan modification agreements, the Court would have to review each putative class member's loan file to make a determination that a loan modification agreement was executed, that Wells Fargo misrepresented the amounts owed, that such a misrepresentation was fraudulent or deceptive, that a payment was made, and that the class member justifiably relied upon Wells Fargo's representation. The dissimilarities between Plaintiff and the proposed class contradict a finding of typicality. Plaintiff has not illustrated that there is a "pervasive violation and that the various injuries alleged all stem from

that common violation[,]" therefore, typicality is not satisfied as to the UTPCPL claim. *Markocki v. Old Republic Nat. Title Ins. Co.*, 254 F.R.D. 242, 249 (E.D.Pa. 2008) (citing *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 (1982)).

### 5. Unique Defenses

"It is well-established that a proposed class representative is not 'typical' under Rule 23(a)(3) if 'the representative is subject to a unique defense that is likely to become a major focus of the litigation." *Marcus*, 687 F.3d at 599 (quoting *Shering Plough*, 589 F.3d at 598). Wells Fargo argues that Plaintiff is subject to the voluntary pay defense. This defense provides that "one who voluntarily pays money with full knowledge of the facts, without any fraud having been practiced upon him, cannot recover it back." *Corgeis Ins. Co. v. Law Offices of Carole F. Kafrissen*, P.C., 140 F.Supp.2d 461, 463 (E.D.Pa. 2001). Wells Fargo alleges "Plaintiff brought her loan current after she filed her original complaint in June 2008, and that act constitutes a voluntary payment of amounts she alleges were charged in breach of her Loan Modification Agreement." Def.'s Br. in Resp. to Pl.'s Mot. for Class Cert. [ECF No. 487] at 25. This defense is unique to Plaintiff because she paid the balance due under her mortgage. To apply class-wide it would have to be determined that the putative class member made a payment and had full knowledge of the facts surrounding that payment. This would compel the court to look into the individual facts of each case, and creates a conflict between putative class members and Plaintiff. Accordingly, Plaintiff has not satisfied typicality. *See Agnostino v. Quest Disgnostics Inc*., 256 F.R.D. 437, 472-73 (D.N.J. 2009) (voluntary payment defense, *inter alia*, negated typicality).

### i. Rule 23(a)(4): Adequacy

The adequacy factor ensures that the class representative "fairly and adequately protect[s] the interests of the class." Fed. R. Civ. P. 23(a)(4). It "serves to uncover conflicts of interest

between named parties and the class they seek to represent." *Beck v. Maximus Inc*., 457 F.3d 291, 296 (3d Cir. 2006) (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997)). This inquiry serves two purposes: (1) to test "the qualifications of the counsel to represent the class[;]" and (2) "to uncover conflicts of interest between named parties and the class they seek to represent." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 532 (3d Cir. 2004). "The adequate representation requirement overlaps with the typicality requirement because in the absence of the typical claims, the class representative has no incentive to pursue the claims of the other class members." *In re American Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996); *see also Stirman v. Exxon Corp.*, 280 F.3d 554, 563 n. 7 (5th Cir. 2002) (same); *Robinson v. Sheriff of Cook Cnty.*, 167 F.3d 1155, 1157 (7th Cir. 1999) (same).

Plaintiff argues that the putative class meets the adequacy factor under 23(a)(4) because plaintiff "entered into mortgage contracts which Defendants systematically serviced using standardized procedures," and will be able to prove Defendant's wrongdoing through common evidence. Pl.'s Br. in Supp. of Mot. for Class Cert. [ECF No. 484] at 24.

Defendant argues that Plaintiff class is "overly broad" that some of the putative class members will not have been affected by Wells Fargo. Specifically, the class wrongfully includes "individuals who never entered into a loan modification agreement with Wells Fargo and thus cannot assert a breach of contract claim or a UTPCPL claim and individuals who were never subject to a foreclosure action and thus could have never paid attorney's fees to Wells Fargo in violation of LIPL." Def.'s Br. in Resp. to Pl.'s Mot. for Class Cert. [ECF No. 487] at 29. Further, Defendant contends that because the class is so overly broad it may include class members who entered into forbearance agreements with Wells Fargo that, if certified, Wells Fargo may be forced to initiate foreclosure actions, and plaintiff's interest in continuing the class

action may be antagonistic to other putative class members. *Id.* at 29-30.

Here, the ability of Plaintiff's counsel to adequately represent the class has not been challenged, therefore the Court will focus on the existence of conflicts between the class representative and the class. The Court has determined that Plaintiff's claims are not typical of the class therefore Plaintiff is not an adequate class representative. Nevertheless, the proposed class raises adequacy concerns worthy of discussion. It is overly broad such that any adjudication could bind absent class members who are unable to opt out without requisite notice. Further, like Wells Fargo argues, many of the class members have not entered into a loan modification agreement with Wells Fargo, -- much less one similar to the one Plaintiff has entered into -- and cannot have a claim against Wells Fargo for breach of contract, unjust enrichment or violation of the UTPCPL, or have not been foreclosed upon and have not been assessed attorney's fees in violation of LIPL. Therefore, it is possible that the putative class members did not suffer the same injury as Plaintiff or any injury at all. Moreover, the putative class members could have claims against Wells Fargo that are not asserted by Plaintiff. *See In re Community Bank of Northern Virginia*, 418 F.3d 277, 307 (3d Cir. 2005) (class was not adequate because class members had Truth in Lending Act and Home Ownership and Equity Protection Act claims that were not asserted by class counsel and named plaintiffs had "no incentive to maximize such claims").

   *f.  Rule 23(b)(3): Common Issues Predominate[7]*

---

[7] Plaintiff's argument that predominance is satisfied is utterly devoid of any legal authority, binding or otherwise, in support of her contention that the predominance factor is satisfied. Plaintiff argues that because she believes the commonality factor is satisfied, this bootstraps her predominance argument. Plaintiff seemingly ignores that commonality and predominance, while interrelated, are two distinct factors that must be proven separately. Plaintiff's entire argument that predominance is satisfied states: "The existence of such common issues, in droves, has already been established. All that remains is to show that these issues predominate over individual issues. It has already been demonstrated that, with regard to governing contractual provisions and uniform treatment at the hands of the servicer, individual issues are scant, to non-existent. Also, given that the issues in this case do not raise issues about multi-factorial causation, there are no significant individualized affirmative defenses available to defendants." Pl.'s Br. in Supp. of Mot. for Class Cert. [ECF No. 484] at 53. Plaintiff's perfunctory argument ignores the fact that

The predominance factor determines whether the putative class is "sufficiently cohesive to warrant adjudication by representation, a standard far more demanding than the commonality requirements of Rule 23(a), requiring more than a common claim." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 311 (internal citations and quotations omitted). The Court of Appeals for the Third Circuit has explained that:

> Issues common to the class must predominate over individual issues. Because the nature of the evidence that will suffice to resolve a question determines whether the question is common or individual, a district court must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case. If proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable.

*Id.* "Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)" because the court must consider factual inquiries as to whether common questions predominate over individual ones. *Comcast,* 133 S.Ct. at 1432. "Whether a particular issue is 'common' or 'individual' depends on the nature of the evidence necessary to resolve the issue. Therefore, a district court must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case." *Gates,* 265 F.R.D. at 219-220 (internal citations and quotation marks omitted). The plaintiff must "demonstrate that each element is capable of proof at trial through evidence that is common to the class rather than individual to its members. In other words, the elements of the claims must be examined through the 'prism' of Rule 23." *Id.* Although a plaintiff is not "required to prove the elements of their claims at the class certification stage[,]" the court must consider the elements of the claim

---

she must <u>prove</u> predominance (along with all other factors) by a preponderance of the evidence. Without more, certification is inappropriate. Plaintiff's section regarding predominance flouts the standard by which predominance must be proven, and solely based upon that point, certification should be denied. However, notwithstanding this fact, the Court will discuss the tenable legal arguments as to why Plaintiff cannot prove predominance.

through the predominance factor "to determine whether they are capable of proof with common, class-wide evidence." *Hernandez,* 2013 WL 2245894, at *7 (quoting *Marcus,* 687 F.3d at 600 (internal quotations omitted)). In doing so, the court must make a "rigorous assessment of the available evidence." *In re Hydrogen Peroxide Antitrust Litig.,* 552 F.3d at 312.

## 1. Breach of Contract

In a case similar to the one at hand, the court found that common issues did not predominate for an alleged breach of contract claim stemming from a mortgage. *O'Gara ex rel. Estate of Portnick v. Countrywide Home Loans, Inc.,* 282 F.R.D. 81, 89 (D.Del. 2012). The plaintiff alleged that the purported "class members entered into standard form Mortgage Agreements with Countrywide and that Countrywide breached the Fee Provisions contained in the Mortgage Agreements by imposing on Class members inflated, unverifiable or false costs, fees and expenses associated with enforcement proceedings." *Id.* at 89 (internal citations and quotation marks omitted). The court found the claim was inappropriate for class treatment because "numerous individualized inquiries [were] required to determine breach and damages[.]" *Id.* Specifically, the court found:

> Although existence of a standard contract is common to all class members and can be demonstrated on a class-wide basis, breach and damages cannot. For instance, in order to determine whether there was a breach, it will be necessary to analyze what each class member paid and what services outside foreclosure counsel performed related to that class member's case. In order to assess whether outside counsel's fees and costs were reasonable, it will be necessary to examine the specific services that outside counsel performed in connection with each foreclosure proceeding, which will vary from class member to class member. Moreover, it will be necessary to assess whether each individual attorney's billing rate and hours expended were reasonable, an inquiry involving individual factual questions which must be answered with individualized proof.
>
> . . .

> Furthermore, proving damages requires class-member-specific proof. Plaintiff has failed to present any evidence regarding how damages can be proven on a class-wide basis. . . . Proving damages will require individualized evidence of the services performed by the outside foreclosure counsel on each class member's case and an analysis of each counsel's hourly billing rate.

*Id.* at 90-91 (citations omitted); *see also Chase Manhattan Mortg. Corp. v. Porcher*, 898 So.2d 153, 156 (Fla.App. 4 Dist., 2005) (predominance was not met because the alleged deliberate practice of mortgage company to assess late fees for payments timely received would require mini-trials on liability and individual issues of liability predominated).

The same reasoning applies with more force here. Plaintiff has not shown that all of the loan modification agreements contain the same applicable provisions. While they could be form documents, each loan modification agreement is individually negotiated, and Plaintiff seeks to certify a class beginning in 2003 and continuing through present. Plaintiff fails to set forth any evidence – and the Court has the difficulty believing – that the loan modification agreements are the same today as they were in 2003, ten years ago. Thus, to demonstrate a valid contract, the Court would have to make an individualized determination of each loan modification agreement and its provisions. Even assuming that Plaintiff could show that every class member entered into identical loan modification agreements, it would require an individualized analysis to determine breach and damages. The Court would need to scrutinize every class member's mortgage transaction history to determine if they made a payment, whether that payment was applied correctly in accordance with the terms of the agreement and the individual damages that the class member is permitted to recover based on the misapplication. An accounting of every class member's loan history would have to be completed in order to establish damages, just as Plaintiff

had her counsel's accountant prepare an analysis of the misapplied loan payments.[8] *See* Sec. Am. Compl. [ECF No. 109] at ¶¶ 34-35, 39, 49, 51, 56-57, 62, 112. Therefore, common issues do not predominate for Plaintiff's breach of contract claim.

## 2. Unjust Enrichment

For the same reasons that Plaintiff's breach of contract claim fails to prove that common issues predominant, Plaintiff's claim for unjust enrichment fails as well. To determine whether Wells Fargo was unjustly enriched or retained any benefits from the class members, the Court would have to make individualized determinations into the loan transaction history and escrow accounts of each of the class members. *See Eversole*, 2007 WL 1552512, at *14 ("proof of liability under a . . . quasi-contract theory will require individualized proof for each plaintiff regarding their loan documents and their specific transactions with EMC[.]"); *Mahtani v. Wyeth*, 2011 WL 2609857, at *11 (D.N.J. June 30, 2011) (individual issues predominated for unjust enrichment claim). To determine whether a class member was overcharged, the Court would first have to determine what amount the class member owed, what amount they paid, and whether Wells Fargo inequitably retained those charges. Plaintiff cannot prove unjust enrichment by common proof. Accordingly, individual issues predominate the unjust enrichment claim and class certification is inappropriate.

## 3. Pennsylvania's Loan Interest Protection Law ("LIPL")

Plaintiff needs to show that all of the class members paid attorney's fees to Wells Fargo that were in excess of those permitted. *See* 41 P.S. § 502; *Salvati v. Deutsche Bank Nat. Trust*

---

[8]      Although Plaintiff suggests that damages can be calculated "mechanically," *see* Pl.'s Br. in Supp. of Mot. for Class Cert. [ECF No. 484] at 15, she has not demonstrated any formula to calculate damages on behalf of approximately 88,000 class members who paid different amounts at different times under different loan modification agreements. Nor has Plaintiff offered any expert testimony as to how damages can be determined on a class-wide basis. "At this stage of the litigation, the Court cannot rely on Plaintiff's mere speculation; rather it is Plaintiff's burden to come forward with evidence explaining how damages can be calculated on a class-wide basis." *O'Gara*, 282 F.R.D. at 91. Plaintiff has failed her burden of proof as to this respect and has not passed the "rigorous analysis" examination necessary for class certification. *See Newton*, 259 F.3d at 187-89.

*Co., N.A.*, 2013 WL 1314777, at *5 (W.D.Pa. 2013) (Section 502 "makes clear [that a plaintiff] cannot sustain a . . . claim if he has not paid monies."); *Benner v. Bank of America, N.A.*, 2013 WL 85913, at *15 (E.D.Pa. Jan. 7, 2013) ("Section 502 only allows recover of other unlawful charges when such amounts have actually been paid to a creditor.); *Waye v. First Citizen's Nat. Bank*, 846 F.Supp. 310, 319 (M.D.Pa. 1994) (LIPL section 502 claim failed because "a demand alone is not sufficient to confer a private cause of action if interest in excess of the statutory maximum was never collected."). Therefore, the court would have to make the determination for each putative class member by reviewing their loan file to first determine whether they were foreclosed upon, whether any attorney's fees were imposed and paid, and then make the determination that the fees were unreasonable or unincurred. Such a determination could not be made without reviewing each putative class member's foreclosure complaint, and the foreclosure attorney's billing records.

Plaintiff fails to show how this can be done by common proof. Moreover, each class member will need to show that the attorney's fees were unreasonable or unincurred, which would necessitate further inquiry into the foreclosing attorney's billing rate, hours expended, and the foreclosure documents. Determining the reasonableness of charges necessarily requires an individual inquiry into each class member's situation and is improper for class certification. *See St. Louis Chiropractic, P.A. v. Fed. Ins. Co.*, 342 Fed.App'x 809, 813 (3d Cir. 2009) (medical charges improper for class certification). Therefore, Plaintiff's LIPL claim is inappropriate for class certification because individual issues predominate.

### 4. Unfair Trade Practices and Consumer Protection Law ("UTPCPL")

Under the catch-all provision of the UTPCPL, "a plaintiff must show that as a result of

the defendant's fraudulent or deceptive conduct, he or she suffered an 'ascertainable loss of money or property.'" *Lewis*, 263 F.R.D. 252, 263 (W.D.Pa. 2009) (quoting 73 P.S. § 201-2(4)(xxi). This provision

> requires the plaintiff prove by clear and convincing evidence all of the elements of common law fraud which include: (1) a false representation of an existing fact or a non-privileged failure to disclose; (2) materiality, unless misrepresentation is intentional or involves a non-privileged failure to disclose; (3) scienter, which may either be actual knowledge or reckless indifference to the truth; (4) justifiable reliance on the misrepresentation, so that the exercise of common prudence or diligence could not have ascertained the truth; and (5) damage as a proximate result.

*Dawson v. Dovenmuehle Mortg., Inc.*, 214 F.R.D. 196, 200 (citations omitted).

"Proof of injury (whether or not an injury occurred at all) must be distinguished from calculation of damages (which determines the actual value of the injury)." *Newton*, 259 F.3d at 188. Where the class seeking certification includes a claim under the UTCPCL catch-all provision and does not include any element of loss in the class definition, the class cannot be certified under Rule 23(b)(3). *Lewis*, 263 F.R.D. at 263. In *Lewis*, the class included any purchaser or lessee of a class vehicle who were forced to sell or trade their vehicle because of a defect. *Id.* at 264. The court determined that certification was improper because "to determine if a particular class member suffered an ascertainable loss, the court would need to inquire into the individual circumstances" to determine whether the class member suffered a loss. *Id.*

Here, Plaintiff does not include an element of loss in the class as it is defined. The class merely consists of members who had a residential mortgage from Washington Mutual transferred to Wells Fargo on property in Pennsylvania during the defined time period and made a payment. It is silent as to whether the class member incurred a loss from Wells Fargo's practices. Therefore, the Court would need to conduct mini-hearings as to each class member to determine

whether Wells Fargo misrepresented the amount owed on the mortgage, whether they paid that amount, whether the loan was misapplied, and whether the class member suffered a loss because of it. "Such a detailed factual analysis would be an unconscionable use of the court's time and makes the case unsuitable for class treatment." *Id*.

Further, many courts have found that a violation of the UTPCPL's catch-all provision is not appropriate for class certification under Rule 23(b)(3) because the element of justifiable reliance is dependent upon predominantly individual issues. *See Cohen v. Chicago Title Ins. Co*., 2013 WL 842706, at *5 (E.D.Pa. 2013) ("The Court finds that Cohen cannot maintain a class action for violation of the UTPCPL's catch-all provision because the need to show justifiable reliance on Chicago's deceptive conduct renders such claims unsuitable for class treatment); *Lewis,* 263 F.R.D. at 264 (predominance not met where "each class member would have to show not only justifiable reliance, but also loss as a result of that reliance, aspects subject to individual, rather than common questions of law or fact."); *Kondratick v. Beneficial Consumer Disc. Co*., 2006 WL 305399, at *7 (E.D.Pa. Feb. 8, 2006) (plaintiff's UTPCPL claim could not "be certified for class treatment because UTPCPL claims require an individualized examination of reliance, causation, and damages."); *Dawson*, 214 F.R.D. at 201 ("Because reliance is an essential element that must be proven in UTPCPL claims . . . that Court finds that individual questions of law and fact predominate over any common questions with respect to the pending claim, thereby precluding class certification pursuant to Rule 23(b)(3)."); *Strain v. Nutri-System Inc.*, 1990 WL 209325, at *9 (E.D.Pa. Dec. 12, 1990) ("The successful maintenance of a cause of action for fraud includes, *inter alia*, a showing that the plaintiff acted in reliance on the defendant's misrepresentation. Because such a showing would normally vary from person to person, the fraud cause of action is not generally appropriate for resolution in a plaintiff-class action.").

Additionally, the plaintiff's reliance is "typically a question of fact for the fact-finder to decide, and requires a consideration of the parties, their relationship, and the circumstances surrounding their transaction." *Johnson v. MetLife Bank, N.A.*, 883 F.Supp.2d 542, 548-49 (E.D.Pa. 2012) (citations omitted).

In a similar case, the plaintiff alleged that the defendant "intentionally mischaracterized bankruptcy-related attorney's fees and 'other taxes,' miscellaneous expenses, corporate advances, and the like, on plaintiff's and class members' accounts." *Dawson*, 214 F.R.D. at 201 (citation to record omitted). Although Plaintiff alleged that he relied on the material misrepresentations and was "subsequently induced not to react to the imposition of the attorney's fees[,]" the court found that this did not show common proof because "level of reliance . . . will vary from person to person and will be dependent upon specific misrepresentations in each instance[,]" and this precluded certification under Rule 23(b)(3). *Id*.

Plaintiff's claim under the UTPCPL cannot be certified under Rule 23(b)(3) because she fails to mention any type of loss in the class definition and because the justifiable reliance element is not intended for class certification under these circumstances. Plaintiff's claim under the catch-all provision of the UTPCPL cannot be certified under Rule 23(b)(3) because it requires an individual analysis into whether each of the putative class members justifiably relied on Wells Fargo's representations, an inherently individual finding. Plaintiff would first have to prove that Wells Fargo misrepresented the amount owed under the mortgage, that the class member justifiably relied upon the representation and paid the misrepresented amount. Like in *Dawson*, where the mortgage company affirmatively misrepresented the attorney's fees for the bankruptcy proceeding as other miscellaneous fees, the court refused to certify the class because the reliance varied from person to person. The same is true here. The Court finds that because

the class is silent as to an amount of loss and a finding of justifiable reliance will vary throughout the class, individual issues predominate. Plaintiff's UTPCPL claim is inappropriate for class certification under Rule 23(b)(3).

g. *Rule 23(b)(3): Superiority*

Rule 23(b)(3) also requires a showing that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Georgine*, 83 F.3d at 633 (quoting Fed. R. Civ .P. 23(b)(3)). Where class certification is "denied based on plaintiff's failure to satisfy the predominance requirement of Rule 23(b)(3), 'we need not dwell at length on the superiority requirement of the rule, inasmuch as the failure to meet any of the requirements of Rules 23(a) and (b) precludes certification of a class." *Dawson*, 214 F.R.D. at 202 (quoting *In re LifeUSA Holding, Inc*., 242 F.3d 136, 147 (3d Cir. 2001)).

As discussed above, the claims presented by Plaintiff all require in depth individual investigations of each of the class member's loan transaction history and the documents appurtenant thereto. Inevitably, if the class were to proceed, mini-hearings on each of the claims would be required before the class could proceed to trial. These inherently individualized issues present the Court with "insurmountable obstacles to certification." *Dawson*, 214 F.R.D. at 202. Therefore, Plaintiff has failed to prove that proceeding as a class action is a superior method of handling the claims against Wells Fargo.

**V. CONCLUSION**

As discussed at length above, Plaintiff has failed to prove that her class is numerous, that her claims against Wells Fargo are typical of the class, that she is an adequate representative of the class, that common issues predominate, and that a class action is a superior method to adjudicate the controversy. It is therefore respectfully recommended that Plaintiff's Motion for

Class Certification be denied.

**RECOMMENDATION**

For the aforementioned reasons, it is respectfully recommended the Plaintiff's, Mary E. Glover's Motion for Class Certification [ECF No. 483] be denied.

Parties who seek to challenge this Report and Recommendation must seek review by the district judge by filing objections within fourteen (14) days of this date. Failure to do so will waive the right to appeal. Any party opposing written objections shall have seven (7) days from the date of service of objections to respond thereto.

Dated: July 18, 2013

Respectfully submitted,

/s Robert C. Mitchell
Robert C. Mitchell
United States Magistrate Judge