IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MARY E. GLOVER,                          )
                                         )
                    Plaintiff,           )
                                         )        Civil No. 08-990
          v.                             )
                                         )        District Judge Donetta W. Ambrose
MARK J. UDREN, UDREN LAW                 )        Magistrate Judge Robert C. Mitchell
OFFICES, P.C., WELLS FARGO               )
HOME MORTGAGE, GOLDMAN                    )
SACHS MORTGAGE COMPANY                    )
                                         )
                    Defendants.          )


## REPORT AND RECOMMENDATION


ROBERT C. MITCHELL, United States Magistrate Judge.

### I.  Recommendation

The instant case was removed to this Court on July 14, 2008.  After approximately six years of litigation, multiple failed interlocutory appeals, the dismissal of all other parties, and the denial of class certification, on February 18, 2014, the remaining Defendant in this case, Wells Fargo Home Mortgage ("Wells Fargo"), filed a motion for summary judgment [ECF No. 652]. Plaintiff, Mary Glover ("Glover"), submitted her response on March 27, 2014 [ECF No. 677]. Wells Fargo submitted its reply on April 30, 2014. [ECF No. 697].

After careful review of Wells Fargo's motion for summary judgment, brief in support, Glover's response, and Wells Fargo's reply, upon independent review of the evidence of record, and supplemental authority submitted by both parties, for the following reasons, it is respectfully recommended that Wells Fargo's motion for summary judgment [ECF No. 652] be granted in all respects except for the limited issue surrounding the FDCPA claim arising after June 7, 2007 for

1

which further briefing should be ordered.

## II. Report

### A. Background

Due to the protracted state of this litigation, the Court will only discuss the facts and procedural history necessary for the disposition of the present motion.[1]

On or about August 2, 2002, Plaintiff executed a promissory note and mortgage to borrow $9,997.00 secured by her residential property from Washington Mutual Bank ("WaMu"). Pursuant to her note and mortgage, Plaintiff agreed to make monthly payments for principal and interest, in addition to monthly escrow payments for taxes and insurance. Approximately one year later, on or about July 29, 2003, WaMu sold its ownership interest in Plaintiff's note and mortgage to Goldman Sachs Mortgage Company ("Goldman"), but it retained its servicing rights to the loan.

In March 2005, Plaintiff was injured in an automobile accident and suffered a loss of income. As a consequence, Plaintiff defaulted on her loan by failing to make loan payments as required under her note and mortgage. At that time, Goldman was Plaintiff's lender and WaMu serviced the loan. Plaintiff contacted WaMu and requested a loan modification to reduce and/or forebear her monthly payments. WaMu agreed to postpone Plaintiff's loan payments for December 2005, January 2006, February 2006 and March 2006 and agreed to reevaluate Plaintiff's application for financial assistance in April 2006. Ultimately, before that time, on March 14, 2006, WaMu denied Plaintiff's request for a loan modification, accelerated the entire unpaid principal balance due, and initiated foreclosure proceedings in the Allegheny Court of

---

[1] To put into perspective the extent of protraction in this case, at the present date, there are currently 712 documents on the docket, not including the numerous text entries that this Court has entered, nor the thousands of exhibits and attachments to the main documents filed.

Common Pleas on or around April 10, 2006 through Udren Law Offices. WaMu, through Udren, sought $12,652.36 in the foreclosure action.

Two months after the foreclosure complaint was filed, in June 2006, WaMu essentially flip-flopped and offered Plaintiff loan modification terms that increased her monthly principal and interest payments and informed Plaintiff that she owed approximately $3,696 for foreclosure fees and costs. Plaintiff claims that the proposed loan modification contradicted itself by instructing her to remit payment in the amount of $3,696 while simultaneously indicating that the amount due was $0.00. Plaintiff never remitted the payment and WaMu never demanded payment of that amount. Plaintiff began to make payments pursuant to the terms set forth in the proposed loan modification, however WaMu did not recognize the terms set forth in the proposal as a loan modification agreement and did not modify Plaintiff's loan to these terms.

In December 2006, WaMu transferred its servicing rights and obligations to Defendant, Wells Fargo and Wells Fargo became the servicer of Plaintiff's loan. Under the servicing agreement, Wells Fargo, as the servicer, was to be compensated by a "Servicing Fee for each Mortgage Loan serviced hereunder[,]" and such servicing fee was "payable solely from, the interest portion of the Monthly Payments and Late Collections with respect to the related Mortgage Loan." Def.'s Concise Statement of Material Facts [ECF No. 654] at ¶ 8. After Wells Fargo became Plaintiff's loan servicer, Plaintiff remitted payments less than the amount required under her Note and Mortgage and did not cure her outstanding loan balance deficiency. Plaintiff was therefore considered in default on her Note and Mortgage.

On January 4, 2008, Plaintiff and Wells Fargo negotiated a loan modification agreement that allowed Plaintiff to cure her default, the operative document for purposes of the present motion. Wells Fargo was permitted to negotiate such a loan modification on behalf of Goldman

based upon the servicing agreement between the two entities. The loan modification agreement set forth five specific modified terms: (1) Plaintiff's first loan payment was due on March 1, 2008; (2) Plaintiff's loan maturity date became February 1, 2038; (3) Plaintiff capitalized $784.34 in interest; (4) Plaintiff's unpaid principal balance became $12,152.02; and (5) Plaintiff's monthly payments of principal and interest became $81.87, at a yearly rate of 7.125%, not including escrow deposit. *See* Loan Modification Agreement [ECF No. 655-7] at 1. The loan modification also provided that: "except as otherwise specifically provided in this Agreement, the Note and Mortgage will remain unchanged, and Borrower and Lender will be bound by, and shall comply with, all of the terms and provisions thereof, as amended by this Agreement." *Id*. at 3. In setting forth these provisions, the loan modification agreement increased Plaintiff's principal balance by $2,643.66, including $784.34 for delinquent interest and $1,859.32 in delinquent escrow. The loan modification agreement also required an upfront contribution of $1,571.02 which was allocated to a line item referred to as "Corp Recov/Title/Mod Fees/Atty/FC/BPO/Appraisal." *Id*. At the time of the loan modification, Plaintiff had a credit of $78.63 in her suspense account, therefore she owed $1,492.39 in arrearages as consideration for the loan modification. Plaintiff tendered a check in the amount of $1,092.39 instead of $1,492.39 required under the loan modification and separately remitted her new monthly payment of $196.72. The $1,092.39 payment was applied to the arrearages. At that time, Plaintiff had a delinquent escrow account of $1,859.32 which was capitalized into her principal balance. On March 17, 2008, Wells Fargo issued a check to Plaintiff in the amount of $1,169.45, refunding an escrow surplus. Plaintiff brought her loan current and out of default on March 5, 2008, after her loan modification settled. Since that date, Plaintiff has been current on her loan and has made monthly loan payments required by the note and mortgage.

Plaintiff claims that while Wells Fargo acted as the servicer of her loan, it did not honor the terms of the mortgage and loan modification agreement by failing to correctly apply monthly payments during the time period of June 20, 2006 to March 4, 2008 to her escrow, interest and principal balance accounts and overstated her unpaid principal balance and misallocated her payments to non-interest bearing suspense and other unauthorized accounts. The foreclosure complaint was withdrawn on March 25, 2009. Sec. Am. Compl. [ECF No. 109] at ¶ 58.

Plaintiff filed her original complaint in the Allegheny Court of Common Pleas in the Commonwealth of Pennsylvania on June 9, 2008, which defendants removed to this court on July 14, 2008, alleging nine counts against multiple defendants in a purported class action.[2] This court granted Plaintiff leave to amend her complaint four times, and on June 9, 2010, she filed her Second Amended Complaint, the operative complaint here. *See* Sec. Am. Compl. [ECF No. 109]. Wells Fargo moved to dismiss the Second Amended Complaint, which the court granted in part and denied in part, dismissing approximately half of the claims brought against Wells Fargo by Plaintiff.[3] Rep. and Rec. [ECF No. 166] *adopted by* Memo. Order [ECF No. 199].

---

[2]     Plaintiff originally brought claims against Mark J. Udren, Udren Law Offices, P.C., Wells Fargo Home Mortgage, Federal Deposit Insurance Corporation ("F.D.I.C.") as receiver for Washington Mutual Bank, F.A., and Goldman Sachs Mortgage Company. On September 25, 2008, the Office of Thrift Supervision closed WaMu and appointed the F.D.I.C. as WaMu's receiver. The F.D.I.C. became the receiver for WaMu in this case on December 3, 2009. *See* Order of 12/3/2009 [ECF No. 65]. Plaintiff dismissed the claims against the F.D.I.C. on December 18, 2009 without prejudice. *See* Notice of Dismissal [ECF No. 69]. The claims that were not dismissed by this Court against Mark J. Udren and Udren Law Offices, P.C., were voluntarily dismissed without prejudice for Plaintiff to bring those claims in state court. *See* Order of 8/2/2011 [ECF No. 268] ("the remaining counts in the Second Amended Complaint against the Udren Law Offices, P.C., Count XVI and XVII are dismissed without prejudice, so that if Plaintiff[] elect[s], they can be re-filed in state court."). Goldman was granted summary judgment as to all of the claims brought against it. *See* Rep. and Rec. [ECF No. 536] *adopted by* Memo. Order [ECF No. 565]. Therefore, the only remaining defendant in this case that Plaintiff has any claims against is Wells Fargo.

[3]     Between October 2010 and October 2012, the docket demonstrated nearly 400 docket entries, a majority of which involved Plaintiff's unbridled and uncompromising arguments

After briefing and an evidentiary hearing, Plaintiff's subsequent motion for class certification was denied on December 3, 2013. *See* 12/03/2013 Order [ECF No. 624].

The remaining claims against Wells Fargo are as follows: (1) breach of Plaintiff's loan modification agreement (Count I); (2) unjust enrichment (Count IX); (3) violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692e(2)(A) and 1692f(1) (Count XI); (4) violation of the Pennsylvania Loan Interest and Protection Law ("Act 6"), 41 P.S. § 502 (Count XVI); and (5) violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") "catch-all" provision, 73 P.S. § 201-2(4)(xxi) (Count XVII).

Wells Fargo filed a motion for summary judgment on February 18, 2014 arguing that it is entitled to summary judgment on all remaining claims because there is no dispute as to any material fact and it is entitled to judgment as a matter of law. Specifically, Wells Fargo advances the following arguments in support of its motion: (1) as to the breach of contract claim based upon the loan modification agreement, Wells Fargo as the loan servicer is not a party to any contract with Plaintiff and alternatively never breached the loan modification agreement; (2) as to the unjust enrichment claim, Wells Fargo was not unjustly enriched in handling Plaintiff's escrow payments and account; (3) alternatively, the breach of contract and unjust enrichment claims fail because they are barred by the voluntary payment doctrine; (4) as to the Act 6 claim, Wells Fargo never collected attorney's fees; (5) as to the UTPCPL claim, Wells Fargo did not

---

regarding discovery matters. In an attempt to rein in the onslaught of discovery motions instigated by Plaintiff, the court appointed a special master to handle the discovery disputes. In response, however, Plaintiff refused to proceed before the special master, filed another barrage of motions with this Court and filed a Writ of Mandamus with the Court of Appeals for the Third Circuit attempting to have the special master removed from the case. Plaintiff was ultimately unsuccessful in her attempts to remove the special master, but nonetheless refused to proceed before the special master for purposes of discovery. This Court closed discovery on September 24, 2012 as a result of Plaintiff's refusal to proceed before a special master for the discovery disputes. *See* Memo. Order [ECF No. 537] at 5.

engage in any deceptive activity in connection with Plaintiff's loan modification; and (6) as to the FDCPA claim, Wells Fargo did not make any false representations to Plaintiff, nor did it collect any amounts from Plaintiff that were not due.

### B.  Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A moving party is entitled to summary judgment if he demonstrates that "the nonmoving party has failed to make a sufficient showing of an essential element of [his] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The nonmoving party bears the burden of adducing palpable evidence "establishing that there is a genuine factual dispute for trial" and may not merely rely upon "bare assertions or conclusory allegations" to survive summary judgment. *Hogan v. Twp. of Haddon*, 278 Fed.App'x 98, 101 (3d Cir. 2008) (citing *Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982)).  "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied [only] when there is a genuine issue of material fact." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).  "Speculation, conclusory allegations, and mere denials are insufficient to raise genuine issues of material fact." *Boykins v. Lucent Techs., Inc.*, 78 F.Supp.2d 402, 407 (E.D.Pa. 2000).  The court should draw inferences "in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992) *cert. denied* 507 U.S. 912 (1993).

### C.  Discussion

1.  Count I: Breach of Contract

The elements to establish a breach of contract are quite simple; the plaintiff must show that a contract existed and its essential terms, that defendant breached the contract, and that plaintiff suffered damages from the breach. *McShea v. City of Philadelphia*, 995 A.2d 334, 340 (Pa. 2010) (citations omitted).

Here, the remaining breach of contract claim is whether Wells Fargo breached the Loan Modification Agreement entered into between Plaintiff and Wells Fargo on behalf of Goldman. This court has previously held that the Loan Modification Agreement is a contract between Plaintiff and Wells Fargo. Rep. and Rec. [ECF No. 166] at 7-10 *adopted by* Memo. Order [ECF No. 199]. Therefore, the court must address whether Plaintiff, as the non-moving party, has presented sufficient evidence to maintain her claim that Wells Fargo breached the Loan Modification Agreement. Wells Fargo argues that it is entitled to summary judgment because (1) a contract was never formed between it and Plaintiff; or (2) if a contract was formed, Wells Fargo has not breached it. *See* Def.'s Br. in Supp. of Mot. for Summ. J. [ECF No. 653] at 8. For the following reasons, the Court finds that Plaintiff has not met her burden, there is no factual dispute as to any material evidence, and Wells Fargo should be entitled to summary judgment on this claim.

i.    *Existence of a Contract*

Wells Fargo argues that it is entitled to summary judgment because the loan modification agreement "did not create a contract between Plaintiff and Wells Fargo, but only modified Plaintiff's Note and Mortgage, upon which Goldman bears the contractual obligation[,]" and as the servicer of Plaintiff's mortgage, the loan modification agreement "created no independent contractual relationship between Plaintiff and Wells Fargo." *Id.* at 6.

Plaintiff responds that it is the law of the case that Wells Fargo is a party to the loan modification agreement and is liable for its breach. Pl.'s Op. Br. [ECF No. 666] at 12.

The Court has previously held that Wells Fargo is a party to the loan modification and can be held liable for its breach. *See* Rep. and Rec. [ECF No. 166] at 7-10 *adopted by* Memo. Order [ECF No. 199].

In so finding, the court stated:

> The January 4, 2008 loan modification document identifies the parties to the agreement as Glover, the "Borrower" and Wells Fargo, the "Lender." The agreement then recites that, in exchange for valuable consideration, the parties agreed to modify, *inter alia*, the loan principal and the terms of the payment. While the loan modification makes clear that the Borrower remains obligated under the original mortgage and note, except as so amended, the agreement clearly delineates new contractual responsibilities between Glover and Wells Fargo. Thus, to the extent that count I [breach of contract] alleges that Wells Fargo breached contractual obligations arising out of the January 4, 2008 loan modification agreement, the Court should deny Wells Fargo['s] motion to dismiss.

Rep. and Rec. [ECF No. 166] at 8 (citations to record omitted) *adopted by* Memo. Order [ECF No. 199].

The court disagrees with Wells Fargo's contention that it was not a party to the loan modification agreement because it negotiated terms on behalf of Goldman. To the extent that Wells Fargo and Plaintiff entered into the provisions set forth in the loan modification agreement, that is a valid contract between the parties and this court will not disturb its previous holding that Wells Fargo can be held responsible for a breach of the loan modification agreement. To the extent that Wells Fargo argues that the law of the case doctrine does not preclude a court from entering summary judgment in favor of a defendant whose motion to dismiss was denied on the same issue, and that the court should do so here, such an argument is

unavailing. *See* Def.'s Reply to Mot. for Summ. J. [ECF No. 697] (citing *Rouse v. II-IV Inc.*, 2008 WL 2914796, at *7 (W.D.Pa. July 24, 3008) *aff'd* 2009 WL 1337144 (3d Cir. 2009)). The Court in making its determination regarding the motion to dismiss reviewed a copy of the loan modification agreement and relied on it in making its decision. The complete record, as it now stands, does not negate that the loan modification agreement is the operative document, nor does it negate that it was entered into by Wells Fargo. Therefore, Wells Fargo's argument that it is not a party to the loan modification agreement is rejected.

Accordingly, the loan modification agreement is a contract between Plaintiff and Wells Fargo as to the explicit terms set forth therein. Specifically, the loan modification agreement modified Plaintiff's loan as follows: (1) Plaintiff's first loan payment was due on March 1, 2008; (2) Plaintiff's loan maturity date became February 1, 2038; (3) Plaintiff capitalized $784.34 in interest; (4) Plaintiff's unpaid principal balance became $12,152.02; and (5) Plaintiff's monthly payments of principal and interest became $81.87, at a yearly rate of 7.125%, not including escrow deposit. *See* Loan Modification Agreement [ECF No. 655-7] at 1. The loan modification also provides that: "except as otherwise specifically provided in this Agreement, the Note and Mortgage will remain unchanged, and Borrower and Lender will be bound by, and shall comply with, all of the terms and provisions thereof, as amended by this Agreement." *Id*. at 3.

Therefore, the inquiry becomes whether Wells Fargo breached any of the terms contained in the loan modification agreement.

ii.    *Breach of the Loan Modification Agreement*

The remaining breach of contract claim by Plaintiff involves the alleged breach of the five terms set forth in the loan modification agreement and the incorporation clause. As to the five explicit terms, Wells Fargo argues that there is no evidence that it has breached any of the

terms of the loan modification agreement and is entitled to summary judgment because it implemented the five terms in Plaintiff's loan modification.[4]

The Court agrees that the record is undisputed and Plaintiff has set forth no evidence to show that Wells Fargo did not implement those terms, or implemented terms contrary to those set forth. Additionally, Plaintiff admits that Wells Fargo implemented these terms.[5] *See* Pl.'s Resp. to Def.'s Concise Statement of Material Facts [ECF Nos. 667 and 678] at ¶ 16. Therefore, Wells Fargo is entitled to summary judgment on Plaintiff's breach of contract claim for the five explicit terms set forth in the loan modification agreement, as it is undisputed that Wells Fargo did not breach these terms.

Plaintiff next raises another breach of contract theory by invoking the integration clause set forth at the end of the loan modification agreement. Plaintiff points out that the loan

---

[4]     Plaintiff's allegations that Wells Fargo breached its contractual obligations "by overcharging [Plaintiff] and misallocating [Plaintiff's] monthly payments" and that Wells Fargo made "charges not authorized by the Note and Mortgage" were dismissed by the Court when it granted Wells Fargo's motion to dismiss. *See* Rep. and Rec. [ECF No. 166] at 7-10 *adopted by* Memo. Order [ECF No. 199]. It found "[t]he Court agrees that Wells Fargo cannot be held liable for breaches arising from the original contract, *i.e.*, the mortgage and note, between [WaMu] and Glover. . . . However, to the extent that the allegations of the complaint concern Wells Fargo's contractual obligations arising from the January 4, 2008 loan modification agreement, Glover has pled a cognizable breach of contract claim under count I." *Ibid*.

[5]     Wells Fargo's concise statement of material facts as to this point states: "Wells Fargo implemented the [l]oan [m]odification per the terms set forth therein and pursuant to the Servicing Agreement with Goldman." Def.'s Concise Statement of Material Facts [ECF No. 654] at ¶ 16. Plaintiff responds: "Admitted, in part. The LMA [loan modification agreement] speaks for itself. The terms of the 2008 LMA are accurately set forth by Wells Fargo. The LMA does not incorporate or reference the Servicing Agreements. The Servicing Agreements integrate and interpret the Purchase Agreements, which are not in the record. It is not possible to interpret an agreement when only half of the agreement is in the record. The Servicing Agreements explicitly provides that servicing rights could not be transferred without fulfilling certain prerequisites which include obtaining auditing certificates and officer certificates. There are no transactional documents in the record linking Wells Fargo to the WaMu/Goldman servicing agreements." Pl.'s Resp. to Def.'s Concise Statement of Material Fact [ECF Nos. 667 and 678] at ¶ 16. Therefore, Plaintiff only disputes the applicability of the servicing agreements, and she admits that Wells Fargo implemented the loan modification pursuant to its terms.

modification refers to Wells Fargo as "Lender" and Plaintiff as "Borrower" and then later states that "the Note and Mortgage will remain unchanged, and Borrower and Lender will be bound by, and shall comply with, all of the terms and provisions thereof[.]" Loan Modification Agreement [ECF No. 655-7] at 3. Plaintiff argues that this binds Wells Fargo to all of the terms set forth in the note and mortgage and that Wells Fargo can be held liable for a breach of the terms set forth in the note and mortgage.

Plaintiff is simply attempting to take another bite at the apple by re-litigating an issue already rejected by this Court under another legally unsupported theory. This Court has previously determined that Wells Fargo was not a party to the note and mortgage and cannot be held liable for breaches of such. *See* Rep. and Rec. [ECF No. 166] at 7 ("The Court agrees that Wells Fargo cannot be held liable for breaches arising from the original contract, *i.e.*, the mortgage and note, between Wa[M]u and [Plaintiff].") *adopted by* Memo. Order [ECF No. 199]. Most tellingly, Plaintiff supplies this Court with no legal basis for the proposition that a servicer becomes a lender and subject to the terms set forth in the note and mortgage simply because it has referred to itself as a lender in the loan modification agreement. Wells Fargo at no point became independently obligated as a lender under Plaintiff's note and mortgage. Plaintiff cannot back her way into imposing liability on Wells Fargo for breaches of the note and mortgage when Wells Fargo was not a party to those documents in the first instance, no rights or obligations were assigned to or assumed by Wells Fargo, and this Court has previously dismissed any and all claims with prejudice that Wells Fargo was liable for a breach of the note and mortgage.[6]

---

[6]     Even if Plaintiff provided this Court with the tenable legal argument that parol evidence should be introduced to explain the ambiguous terms of the loan modification, *see Ins. Adjustment Bureau, Inc. v. Allstate Ins. Co.*, 905 A.2d 462, 468-69 (Pa. 2006), such argument fails because all record evidence shows that, for the operative time period, Goldman was Plaintiff's lender. It would be absurd for this Court to conclude that a loan modification

Additionally, to the extent Plaintiff relies upon an agency theory to bind Wells Fargo to the note and mortgage, this argument is also rejected. This is the first time that Plaintiff sets forth her "undisclosed principal" theory against Wells Fargo. Under this theory, Plaintiff argues that an undisclosed principal is liable for the acts and contracts of his agent. Pl.'s Op. Br. [ECF No. 666] at 12. Primarily, Plaintiff's argument is legally untenable to the extent that an agent for a disclosed principal is not personally liable on a contract between the principal and a third party unless the agent specifically agrees to it. *See Vernon D. Cox & Co. v. Giles*, 406 A.2d 1107, 1110 (Pa. Super. Ct. 1979). Only when an agent does not disclose the fact of the agency or the identity of the principal will it be considered to have assumed personal liability. *Id.* Therefore it is imperative for Plaintiff to illustrate through record evidence that Goldman or WaMu were undisclosed and that she had no notice of that fact. *Id.* ("If, at the time of a transaction conducted by an agent, the other party thereto has notice that the agent is acting for a principle and of the principle's identity, the principle is a disclosed principle. . . . [A] person has notice of a fact when he has actual knowledge of it, has reason to know it, should know it, or has been given notification of it.") (citations omitted). Here, Plaintiff, who bears the burden of proof, offers no evidence of the fact that she did not know that WaMu or Goldman were undisclosed principals. The fact that she entered into the loan contract with WaMu negates this finding. However, this Court refuses to comb through the record to find some indicia of reliable evidence to buttress Plaintiff's agency theory, especially when it has not been pled and is first introduced in

---

agreement between a mortgagor and servicer acts as an assignment of rights, implied or otherwise, to transform a servicer into the lender. *See also Trunzo v. Citi Mortg.*, 876 F.Supp.2d 521, 533 (W.D.Pa. 2012) ("As a 'servicer' only receives limited rights and obligations under the mortgage contract relating to servicing, it is not a party to the original debt instruments like a 'lender' or 'note holder,' and, therefore, cannot be held liable for breaches in obligations that remain held by the 'lender' or 'note holder.'"). It does not negate the fact that at no time did Wells Fargo independently become contractually obligated under Plaintiff's note and mortgage.

Plaintiff's response to Wells Fargo's motion for summary judgment. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 109 n. 9 (3d Cir. 2002) ("For the sake of clarity, [a plaintiff] should not be able to amend a complaint through any document short of an amended pleading."). Accordingly, Plaintiff's arguments are rejected.

It is therefore respectfully recommended that Wells Fargo's motion for summary judgment as to all of the breach of contract theories brought by Plaintiff be granted.

2. <u>Unjust Enrichment</u>

Under Pennsylvania law, the elements to state a cause of action for unjust enrichment are as follows: "The elements of unjust enrichment are benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." *Joyce v. Erie Ins. Exchange*, 74 A.3d 157, 169 (Pa.Super.Ct. 2013) (quoting *Stoeckinger v. Presidential Fin. Corp. of Delaware Valley*, 948 A.2d 828, 833 (Pa.Super.Ct. 2008)). Whether a claim for unjust enrichment exists depends on the "unique factual circumstances of each case. In determining if the doctrine applies, we focus not on the intention of the parties, but rather on whether the defendant has been unjustly enriched." *Ibid*. The element of most import is whether the "enrichment of the defendant is *unjust*." *Ibid*. (emphasis in original).

Plaintiff's remaining claim against Wells Fargo for unjust enrichment includes the improper collection and handling of escrow charges and the failure to adhere to RESPA provisions. The Court has already determined that "for those allegations in the complaint for which Wells Fargo cannot be held liable under a breach of contract theory, namely, improper collection and handling of escrow charges (count II) and failure to adhere to RESPA provisions

[()count III), Wells Fargo's motion to dismiss [the unjust enrichment claim is] denied." Rep. and Rec. [ECF No. 166] at 13 adopted by Memo. Order [ECF No. 199]. As for Plaintiff's unjust enrichment claim regarding escrow charges, Plaintiff alleges that Wells Fargo imposed improper charges and interest on Plaintiff's escrow funds that were not authorized by the Note and Mortgage and unjustly retained those improper charges and interest. Plaintiff claims that Wells Fargo was unjustly enriched through violating RESPA by failing to provide annual RESPA escrow statements which led Plaintiff to pay improper charges and interest on the escrow funds. Specifically, Wells Fargo may only be liable if it improperly charged and unjustly retained fees or interest associated with Plaintiff's escrow account.

Wells Fargo argues that it is entitled to summary judgment because Plaintiff has offered no evidence of her claims that Wells Fargo was unjustly enriched, and to the contrary, the evidence shows that Wells Fargo did not improperly handle Plaintiff's escrow nor did fail to adhere to RESPA.

Plaintiff responds that she "can demonstrate that, as a result of Wells Fargo's refusal to abide by the terms of the loan contract: (1) the lien against her property was inflated, unjustly inflating the value of Wells Fargo's portfolio of servicing rights . . . and (2) she was forced to capitalize additional delinquent escrow and interest payments, increasing the principal balance of her loan, and, again, correspondingly inflating the value of Wells Fargo's portfolio of servicing rights." Pl.'s Op. Br. [ECF No. 666] at 17.

Not only does Plaintiff change her theory of recovery from that set forth in her complaint, *i.e.*, imposing improper charges and interest to capitalizing delinquent escrow, Plaintiff does not cite to any exhibits attached to her brief in support of her contentions. Nor does she point this Court to any evidence that shows that Wells Fargo improperly capitalized delinquent escrow, or

how any of this "unjustly enriched" Wells Fargo. Additionally, Plaintiff fails to allege the amount that Wells Fargo was unjustly enriched as to her purported theories, and fails to cite to any record evidence in her brief of this amount.[7] Indeed, the escrow charges that Plaintiff paid were amounts permitted by her note and mortgage, Wells Fargo placed those payments into an escrow account and used those funds, as required by the note and mortgage, for mortgage and hazard insurance and taxes, charges also permitted by the note and mortgage. *See* Stoneking Decl. [ECF No. 655-1] at ¶¶ 24-30. Plaintiff offers no expert testimony or documentary evidence to rebut these assertions creating a genuine issue of material fact. Therefore, it is clear from the record that Wells Fargo has not been unjustly enriched by the improper collection of interest or escrow charges or the capitalization of delinquent escrow, and it is entitled to summary judgment as to this claim.

Additionally, and more exasperating than the complete lack of evidence[8] with which Plaintiff uses to support her unjust enrichment claim in connection with her escrow account, Plaintiff does not contest Wells Fargo's argument that it is entitled to summary judgment for the

---

[7]    In fact, Plaintiff spends only three-quarters of a page in her response brief to Wells Fargo's motion for summary judgment arguing her unjust enrichment claim should survive summary judgment, a majority of which is reproduced herein. *See* Pl.'s Op. Br. [ECF No. 666] at 16-17.

[8]    By finding that Plaintiff lacks evidence to support her claim does not mean that she has not had ample opportunity to conduct discovery, nor does it mean that she lacks the documentary evidence necessary to support her claims. She was privy to, *inter alia*, her note, mortgage, servicing agreements, her entire loan payment history, loan modification agreement and corresponding documents, escrow disclosure statements, and refund checks. Plaintiff continually fails to support her "factual" contentions with any evidence of record. This Court refuses to pour through the mountainous record to connect the dots for Plaintiff. It must also be noted that Plaintiff's response brief is almost devoid of any citation to any evidence of record. It is appropriate to mention here that "[j]udges are not like pigs, hunting for truffles buried in briefs." *U.S. v. Starnes*, 583 F.3d 196, 216 (3d Cir. 2009) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)). If Plaintiff had any factual support in the record for her claims, it was "incumbent upon her to direct the [court's] attention to those facts." *DeSheilds v. International Resort Properties, Ltd.*, 463 Fed.App'x 117, 120 (3d Cir. 2012).

unjust enrichment claim as it pertains to the RESPA provisions. Therefore, summary judgment should be granted in Wells Fargo's favor for this claim as Plaintiff has not met her burden by illustrating some genuine issue of material fact as to the unjust enrichment pertaining to the RESPA provision exists.[9]

Accordingly, it is respectfully recommended that Wells Fargo's motion for summary judgment as to Plaintiff's unjust enrichment claim be granted.

### 3. Pennsylvania Loan Interest Protection Act ("Act 6")

The remaining claim against Wells Fargo under Pennsylvania's Loan Interest Protection Act ("Act 6") involves 41 P.S. § 502. This section entitled, "Usury and excess charges recoverable," provides:

> A person who has paid a rate of interest for the loan or use of money at a rate in excess of that provided for by this act or otherwise by law or has paid charges prohibited or in excess of those allowed by this act or otherwise by law may recover triple the amount of such excess interest or charges in a suit at law against the person who has collected such excess interest or charges.

41 P.S. § 502.

Plaintiff has maintained that Wells Fargo has violated 41 P.S. § 502 by inherently violating 41 P.S. § 406 related to improperly imposed attorney's fees.[10] Specifically, Plaintiff's

---

[9]    Because Wells Fargo is entitled to summary judgment on the breach of contract and unjust enrichment claims, Wells Fargo's alternative argument involving the voluntary pay doctrine will not be discussed.

[10]    41 P.S. § 406 entitled "Attorney's fees payable" specifically provides:

With regard to residential mortgages, no residential mortgage lender shall contract for or receive attorney's fees from a residential mortgage debtor except as follows:

(1) Reasonable fees for services included in actual settlement costs.
(2) Upon commencement of foreclosure or other legal action with respect to a residential mortgage, attorney's fees which are reasonable and actually incurred by the

theory of recovery under Act 6 is as follows: "Wells Fargo unilaterally . . . increase[d] the [Plaintiff's] debt by adding unauthorized amounts to [her] unpaid debt balance that it deemed due and owing. The unauthorized attorney's fees and costs that . . . Wells Fargo . . . collected are recoverable under [Act 6.]" Sec. Am. Compl. [ECF No. 109] at ¶¶ 209-210.

This court has previously held that Wells Fargo, as Plaintiff's servicer, was not a residential mortgage lender under Act 6 and could not be held liable under section 406 because section 406 applies solely to residential mortgage lenders. Rep. and Rec. [ECF No. 166] at 19-20 *adopted by* Memo. Order [ECF No. 199]. After explaining the statutory scheme of sections 404 and 406, the Court found that because the allegedly improper attorney's fees that violated section 406 were imposed or collected by WaMu, not Wells Fargo, and before Wells Fargo ever became the servicer of Plaintiff's loan, Wells Fargo cannot be liable under section 406. Additionally, the Court found that Wells Fargo would not otherwise be subject to section 406, as it was not a residential mortgage lender as required under section 406 and only serviced Plaintiff's loan. *Ibid*. The Court denied dismissing Plaintiff's claims under section 502, however, and found:

> [Plaintiff's] allegation that [she] can recover for authorized amounts added to her unpaid debt balance under 41 P.S. § 502, however, survives dismissal. Glover's complaint alleges that Wells Fargo collected excessive and/or unauthorized escrow, interest, and late charges and unilaterally increased her debt by adding these unauthorized amounts to her balance.

*Ibid*. Therefore, the Court found that because Wells Fargo, as a loan servicer, was not a residential mortgage lender, it could not violate sections 404 and 406 which applied only to

---

residential mortgage lender may be charged to the residential mortgage debtor.

(3) Prior to commencement of foreclosure or other legal action attorney's fees which are reasonable and actually incurred not in excess of fifty dollars ($50) provided that no attorney's fees may be charged for legal expenses incurred prior to or during the thirty-day notice period provided in section 403 of this Act.

41 P.S. § 406.

residential mortgage lenders from the plain language of the statute and dismissed those claims with prejudice.

In response to the present motion, Plaintiff repackages her dismissed section 406 argument for improperly imposed attorney's fees and argues that the same attorney's fees prohibited by section 406 are recoverable the broader language of section 502.

In support of its motion for summary judgment, Wells Fargo argues that there is no evidence showing that it has imposed attorney's fees, nor is there any evidence that it has capitalized any improper amounts into Plaintiff's loan balance which would violate section 502.

However, before this Court delves into the merits of whether these amounts were imposed on Plaintiff, it must first be discussed whether Plaintiff's remaining Act 6 claim is even a viable cause of action as a result of an opinion issued by the Pennsylvania Superior Court[11] during the pendency of the present motion.[12] *Glover v. Udren Law Offices*, --- A.3d ---, ---, 2014 WL 1622100 (April 23, 2014) (the "Superior Court decision"). The case before the Superior Court involved parties involved in this lawsuit, namely, Mrs. Glover as Plaintiff and Udren Law Offices, a previously dismissed defendant in this case. While the case was before this Court, the parties agreed to dismiss Plaintiff's claims under Act 6 against Udren without prejudice to her right to pursue them in state court. At the state court trial level, Plaintiff's Act 6 claims were dismissed on preliminary objections. Plaintiff appealed this decision, and set forth the following argument in the Superior Court as follows:

---

[11] While a district court sitting in diversity is only bound by decisions of the highest state court, "[i]n the absence of an authoritative pronouncement by a state's highest court, [a federal district court] may give serious consideration to the opinion of an intermediate appellate court." *Holmes v. Kimco Realty Corp.*, 598 F.3d 115, 118 (3d Cir. 2010) (citations omitted).

[12] After its motion for summary judgment was filed, Wells Fargo submitted a Notice of Supplemental Authority of this decision to this court. Notice of Supplemental Authority [ECF No. 694]. Plaintiff was given an opportunity to respond to any argument raised by Wells Fargo, and did so. Response to Notice [ECF No. 705].

> Because section 502 provides a remedy against a person who
> collects excess fees and charges, and person is defined broadly to
> "include but not be limited to residential mortgage lenders," [under
> Act 6] Glover can maintain a cause of action against the residential
> mortgage lender's foreclosure attorney for collecting attorney's
> fees in excess of those described in section 406.

*Id*. at *4. The Superior Court rejected Glover's argument and in doing so, narrowed the scope of

recovery under section 502. The Superior Court opined:

> Given the principles of statutory interpretation by which we are
> bound, we must reject Glover's argument. To do otherwise would
> require us to rewrite section 406 and the conduct proscribed by it.
> By using the specific term "residential mortgage lender" in section
> 406, the Legislature has expressed its intention to control the
> conduct of residential mortgage lenders as defined under Act 6
> when the residential mortgage lenders contract for attorney's fees
> and receive those fees from borrowers. The use of this term makes
> clear that only residential mortgage lenders can commit a violation
> of section 406 by contracting for or receiving fees in excess of
> those specified therein. As Udren is not a residential mortgage
> lender, it cannot violate section 406.
>
> Glover acknowledges that section 406 "regulates attorney
> fee provisions contained within . . . contracts that are entered into
> by homeowners and residential mortgage lenders, not their
> foreclosure counsel[,]" but argues that section 502 must be read to
> encompass law firms acting for residential mortgage lenders
> because "regulating a residential mortgage lender's ability to
> contract for and receive such . . . fees would not, by itself, protect
> homeowners from paying such fees if the law permitted law firms
> to collect those fees on behalf of [lender]. Glover's Brief at 18.
> We are not swayed by this argument. As discussed above, the
> legislature intentionally used the term "residential mortgage
> lender" to define the entities subject to the constraints contained in
> section 406. Had it intended to include law firms that act on the
> behalf of residential mortgage lenders in the prosecution of
> foreclosure actions, it would have made this explicit in the text of
> the statute. Moreover, section 406 limits the amount of attorney's
> fees for which a residential mortgage lender and borrower may
> contract. 41 Pa. C.S. § 406. A law firm acting as foreclosure
> counsel for a residential mortgage lender is not a part of the
> agreement between the residential mortgage lender and borrower.
>
> **Section 502 is a general *remedial* provision for conduct**

**prohibited by Act 6 or otherwise involving the loan of money**. *See Roethlein v. Portnoff Law Assoc. Ltd.*, [] 81 A.3d 816, 825 (2013) (rejecting claim against private tax collectors because "[s]ection 502 does not support a cause of action to challenge costs, unless those costs are incurred in connection with the loan or use of money."). **Indeed, section 502 is contained within that portion of Act 6 which is entitled "remedies and penalties." We reject the notion that by use of the term "person" in section 502, the Legislature inferentially expanded the scope of potential violators of section 406 of the Act.** While it is clear that the Legislature defined the term person to include various generic legal entities includ[ing] but not [] limited to residential mortgage lenders," we read the definition to clarify that various sections of the Act do not apply ***only*** to residential mortgage lenders. While the majority of the provisions in Act 6 apply to residential mortgage transactions, Act 6 also addresses conduct by actors other than residential mortgage lenders. See e.g., 41 P.S. §§ 201 (governing the maximum lawful interest rate allowed for the loan or use of money in the amount of $50,000 or less); 407(c) (forbidding a plaintiff in confessed judgment action from receiving payment from defendant for costs associated with satisfying judgment); 503 (providing that reasonable attorney's fees are recoverable for a prevailing "borrower or debtor, including but not limited to a residential mortgage debtor[.]"). . . . Thus, the definition of "person" in section 101 makes clear that when the term "person" is used, it is not limited to residential mortgage lenders.

We reiterate that this Court may not disregard the words of a statute in an attempt to give effect to what we presume the purpose of the statute to be. . . . This is exactly what Glover asks us to do, and so her argument is unavailing.

*Glover*, 2014 WL 1622100, at *4 - *6 (emphasis added).

Wells Fargo argues that the Superior Court's determination undermines Plaintiff's theory of recovery under Act 6 in this case and warrants summary judgment in its favor. It argues:

The Udren opinion clarified the scope of [Act 6] holding that the remedies provision at Section 502 cannot be expanded beyond the scope of Section 406, which 'makes clear that only residential mortgage lenders can commit a violation of section 406." *Udren*, slip op. at 11. The Superior Court concluded that the use of the word 'person' in the remedies provision of Section 502 did not expand the 'scope of potential violators of section 406 of the Act.'

> *Id.* at 13. Because the violation of [Act 6] that Plaintiff has alleged
> is based on Section 406, which applies only to residential mortgage
> lenders, Wells Fargo cannot be subject to liability under Section
> 502 based on Udren. As this Court previously held, Wells Fargo
> was not a residential mortgage lender because it did not obtain a
> mortgage from Glover, and Wells Fargo could not therefore be
> held liable for a violation of Section 406 of [Act 6].

Notice of Supplemental Authority [ECF No. 694] at 1-2.

Plaintiff responds that the Superior Court's holding should not be extended to apply here, because the court was only asked to determine whether an attorney attempting to collect fees for the mortgagee was a residential mortgage lender for purposes of section 406, and not whether a servicer "is an Act 6, Article V person[.]" Pl.'s Resp. to Notice of Supplemental Authority [ECF No. 705] at 1. She also argues that there is binding precedent set forth by the Court of Appeals for the Third Circuit which holds that a servicer may be found liable for a violation of Act 6. *Id.* at 2 (citing *In re Smith*, 866 F.2d 576, 586 (3d Cir. 1989)).[13]

The Court must read the Superior Court's opinion in context with Glover's remaining theory of recovery under Act 6. Plaintiff continues to claim that Wells Fargo improperly imposed attorney's fees in violation of section 502 – which allows for treble damages for "charges prohibited or in excess of those allowed by this act or otherwise by law[.]" 41 P.S. § 502. However, Plaintiff fails to address, in the context of the Superior Court's opinion, that because her section 406 claims have been dismissed with prejudice, whether she has a

---

[13]     *In re Smith* is inapplicable, as the issue involved whether the servicer violated section 403 and 504 of Act 6 "by failing to send Smith the required thirty day pre-foreclosure notice advising her, *inter alia*, of the lender's intention" to initiate foreclosure proceedings. *In re Smith*, 866 F.2d at 580. Here, Plaintiff alleges a violation of section 502 through section 406 relating to attorney's fees and prohibited charges, not a violation of a notice requirement. These sections do not proscribe the same conduct and Plaintiff's argument that these sections must be interpreted the same is rejected.

cognizable cause of action under section 502.[14]  For the following reasons, the Court finds that

Plaintiff cannot, after her substantive claim for the improper imposition of attorney's fees has

been dismissed with prejudice, repackage this same claim under the remedial provision of

section 502.

Primarily, Plaintiff's argument that the Superior Court's decision did not address and

does not apply to servicers because that question was not specifically set forth by the Superior

Court is unpersuasive.  The Superior Court was examining the breadth of the two sections of Act

6 that are applicable here, sections 406 and 502.  Whether the purported violator is a mortgagee's

attorney or a servicer of the loan is inapposite by the language set forth in the Superior Court's

opinion, as it turns on whether those entities are characterized as residential mortgage lenders.

The Court therefore agrees with Wells Fargo's interpretation of the Superior Court's opinion,

and finds that the use of the word "person" in section 502 does not inferentially expand the scope

of section 406 to apply to those other than residential mortgage lenders.  Moreover, we find that

the Superior Court's language made it evident that section 502 is a remedial provision and not a

separate cause of action when the underlying violation of Act 6 or "other" law has been

dismissed.

The Pennsylvania Supreme Court has not definitively determined whether 41 P.S. § 502

creates a separate cause of action.  The United States Supreme Court has explained while the

> highest state court is the final authority on state law, . . . it is still
> the duty of the federal courts, where the state law supplies the rule
> of decision, to ascertain and apply that law even though it has not
> been expounded by the highest court of the State.  An intermediate
> state court in declaring and applying the state law is acting as an
> organ of the State and its determination, in the absence of more

---

[14]     It is also surprising that Wells Fargo has not attempted to sojourn Plaintiff's continued
attempts at arguing that she is permitted to allege a theory under section 406, as such an
argument is inconsistent with the Court's holding dismissing such a claim with prejudice.

> convincing evidence of what the state law is, should be followed
> by a federal court in deciding a state question.

*Fidelity Union Trust Co. v. Field*, 311 U.S. 169, 177-178 (1940). Here, the Pennsylvania

Supreme Court, while not examining the question of whether section 502 has created a separate

cause of action, has nevertheless examined the scope of section 502. In *Roethlein v. Portnoff*

*Law Associates*, 81 A.3d 816 (Pa. 2013), taxpayers brought suit under 41 P.S. 502 alleging that

section had been violated based upon the improper imposition of attorney's fees for the

collection of delinquent taxes. *Id*. at 817. The question brought before the court was whether Act

6, through the broad language of section 502 "provides a cause of action to challenge costs in the

collection of delinquent taxes and to impose statutory penalties of treble damages and attorney's

fees when the costs did not arise from a transaction involving the loan or use of money[.]" *Id*. at

819. In finding that section 502 did not apply, the high court held that section 502 did not

"support a cause of action to challenge costs, unless those costs are incurred in connection with

the loan or use of money." *Id*. at 825. While the court recognized that an argument of whether

section 502 serves as a substantive cause of action at all existed, as posited by the Superior

Court's dissenting opinion, it did not offer any view as to this argument. *Id*. at 820 (in the

Superior Court's dissenting opinion, "Judge Leavitt first explained that Section 504, not Section

502, creates a cause of action for a violation of Act 6, and that Section 502 simply specifies the

damages available under the Act.") (quoting *Roethlein v. Portnoff Law Associates, Ltd*., 25 A.3d

1274, 1284 (Pa.Cmwlth. 2011) (J. Leavitt, dissenting)).[15] However, in giving great deference to

---

[15] This Court finds Judge Leavitt's reading of section 502 very persuasive. Specifically, Judge Leavitt observed: "Section 502 does not create a cause of action for a violation of Act 6, let alone another statute[]. . . . All Section 502 does is authorize triple damages, assuming a cause of action under Act 6." *Roethlein*, 25 A.3d at 1284 (J. Leavitt, dissenting). Therefore, section 502 serves only as a remedial provision and is not a separate cause of action without a violation of some other section of Act 6.

the Superior Court's plain language in Glover that section 502 is a "general remedial" provision contained within the "remedies and penalties" portion of Act 6, and that the Pennsylvania Supreme Court emphasized a restrictive application of section 502 and Act 6, the Court finds that section 502 is not a separate cause of action where the underlying violation of Act 6, or "other" law has been dismissed.[16] *See Roethlein*, 81 A.3d at 824 ("Provisos shall be construed to limit rather than to extend the operation of the clauses to which they refer.") (quoting 1 Pa.C.S.A. § 1924). Of course, in order to be entitled to a remedy or to impose a penalty, the plaintiff must show that some other section of Act 6 or law has been violated.[17] To find otherwise would render the Superior Court's emphasis that it is a remedial provision meaningless.

Accordingly, it is respectfully recommended that Wells Fargo's motion for summary judgment on Plaintiff's 41 P.S. § 502 claim be granted.

### 4. FDCPA

Plaintiff's remaining claims against Wells Fargo regarding the Pennsylvania Fair Debt

---

[16] While Plaintiff's section 502 claim was permitted to proceed as a separate cause of action, this finding was made three years before the Pennsylvania Supreme Court issued its opinion in *Roethlein*, and four years before the Pennsylvania Superior Court issued its opinion in *Glover*. Such grounds are appropriate to reexamine this issue as it is a consideration of an intervening change in the law. *See Lazardis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010). Additionally, while Plaintiff proceeded with this same legal theory in its motion for class certification and this Court reiterated Plaintiff's arguments in its opinion, such recognition of Plaintiff's legal theory is not binding here. Primarily, a motion for class certification by its very nature only determines the existence and scope of the class, and is not dispositive of the individual's claims. Additionally, the Superior Court's opinion expelling Plaintiff's theory of recovery was decided after this Court issued its opinion on the motion for class certification.

[17] In a similar case, *Trunzo v. Citi Mortgage*, 2014 Wl 1317577 (W.D.Pa. March 31, 2014), our Court determined that the Pennsylvania Supreme Court in *Roethlein* did not go as far as stating that section 502 was not a substantive cause of action. *Id*. at *17 n. 9 ("The *Ro[e]thlein* court did not go as far to say that [section] 502 was not a substantive provision of Act 6[.]"). This Court agrees with the finding that *Roethlein* did not specifically hold that section 502 is not a substantive cause of action; however the Pennsylvania Superior Court finding in *Glover* post-dates this court's decision in *Trunzo*. The Court will therefore defer to the Superior Court's determination on this issue.

Collection Practices Act ("FDCPA") fall under sections 1692e(2)(A) and 1692f(1). 15 U.S.C. § 1692e, which deals with false or misleading representations of the character, amount or legal status of any debt, provides:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: [] The false representation of – [] the character, amount, or legal status of any debt.

15 U.S.C. § 1692e(2)(A). 15 U.S.C. § 1692f(1) titled "Unfair practices" involves the collection of an amount that is not authorized by agreement and provides that it is a violation to collect "any amount (including any interest, fee, charge, or expense incidental to the principal obligation unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

Plaintiff claims that Wells Fargo violated section 1692f by representing that Plaintiff "owed amounts [she] did not owe, including charges for, *inter alia*, unincurred and/or unreasonable attorney's fees and costs, excessive escrow charges, excessive interest charges, late fees for payments that were not late, and other unauthorized charges, including collection on foreclosure fees and charges." Sec. Am. Compl. [ECF No. 109] at ¶ 168. Additionally, Plaintiff claims that Wells Fargo violated section 1692e "by failing to correctly notify [Plaintiff] in its subsequent communications that it is a debt collector." *Id*. at ¶ 171.

Wells Fargo moves for summary judgment on both of these sections under the FDCPA. First, Wells Fargo argues that any claim filed one year prior to June 9, 2008, the date the complaint was filed, is barred by the FDCPA's one-year statute of limitations. Next, to the extent that Plaintiff seeks recovery for communications after June 9, 2007, Wells Fargo is entitled to summary judgment on those claims because Plaintiff has failed to present any

evidence that it demanded or collected any amounts from Plaintiff that were not due. Further, to the extent that Plaintiff may assert that the loan modification agreement attempted to collect a debt, loan modification offers do not constitute actionable communications under the FDCPA.

Primarily, Plaintiff does not contest that any communications before June 7, 2007 are outside of the statute of limitations. Therefore, summary judgment should be granted in favor of Wells Fargo for any claim arising before June 7, 2007.

Next, Plaintiff argues that Wells Fargo's "demand for liquidated attorney's fees violated the FDCPA's prohibition on misrepresentation concerning the 'character, amount or legal status of any debt' or the collection of any amount not 'expressly authorized by the agreement creating the debt or permitted by law." Pl.'s Op. Br. [ECF No. 666] at 18-19. Specifically, Plaintiff argues that the $1,571.02 for "Corp/Recov/Mod Fees/Atty/FC/BPO/Appraisal" in connection with the loan modification agreement violates the FDCPA.

Plaintiff again fails to identify any shred of evidence that the fees requested by Wells Fargo were not owed. While the Court agrees with Plaintiff's contention that the amount demanded or collected is of no consequence for FDCPA liability to attach, Plaintiff must still prove the amount paid was not the amount owed. Plaintiff merely asserts that in support of its FDCPA claim that "[a]s to fees requested or demanded, there are multiple instances (after June 7, 2007) in which Wells Fargo requested fees that were not owed. For instance, the $1,571.02 for "CorpRecov/Title/Mod Fees/Atty/FC"[.]" Pl.'s Op. Br. [ECF No. 666] at 19. Such a statement is a textbook "bare assertion" which Federal Rule of Civil Procedure protects against. Again, the Court refuses to scan the voluminous record to find the amounts collected in violation of the FDCPA and make Plaintiff's arguments for her. *See Equip. Fin. LLC v. Hutchinson*, 2010 WL 3791481, at *2 (E.D.Pa. Sept. 24 2010).

Plaintiff's argument for recovery under section 1692e is that Wells Fargo failed to correctly notify Plaintiff that it is a debt collector in conjunction with the loan modification. Plaintiff, <u>again</u>, offers no evidence of any communication sent to her, does not cite to these letters in her response brief, nor does she reproduce the purported language in her response which allegedly violates the FDCPA. This Court cannot conclude that a genuine issue of material fact exists as to these communications when Plaintiff has not accessibly provided this Court with such evidence. Again, as has been mentioned numerous times before, this Court refuses to scour the record, especially one overwhelmed with 712 documents upon thousands more exhibits attached to those documents spanning the last six years to save Plaintiff's claims from summary judgment.

Lastly, Plaintiff argues that the fact that Wells Fargo did not withdraw the foreclosure action until November 25, 2009 when her loan modification, which closed on March 5, 2008, violated the FDCPA § 1692e(2) by mischaracterizing the character, amount or legal status of the debt. *See* Pl.'s Op. Br. [ECF No. 666] at 20. Plaintiff relies on *Pollice v. National Tax Funding, L.P.*, 225 F.3d 379, 400 (3d Cir. 2000) for this proposition. However, *Pollice* addressed whether homeowners' water and sewer obligations meet the definition of "debt" for purposes of the FDCPA, not whether a failure of a loan servicer's to withdraw a foreclosure action is a mischaracterization as to the character, amount or legal status of a debt after a loan modification agreement has been entered into. Because it is unclear whether summary judgment is appropriate for this issue, summary judgment on the limited issue of whether Wells Fargo's failure to withdraw the foreclosure complaint for approximately eighteen months after it entered into the loan modification agreement with Plaintiff should be temporarily denied and further briefing should be ordered.

Therefore, Wells Fargo's motion for summary judgment as to Plaintiff's FDCPA claims should be granted in part and temporarily denied in part.

5. <u>UTCPCL</u>

The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTCPCL") proscribes deceptive acts and unfair competition in the discourse of trade and commerce. 73 P.S. § 201-3.

Plaintiff's remaining claim under the UTCPCL falls under 73 P.S. § 201-2(4)(xxi), referred to as the "catch-all" provision. This section provides:

> (4) "**Unfair methods of competition**" and "**unfair or deceptive acts or practices**" mean any one or more of the following:
> . . .
> (xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

73 P.S. § 201-2(4)(xxi) (emphasis in original). To prevail on this claim, Plaintiff must present evidence showing "(1) a deceptive act that is likely to deceive a consumer acting reasonably under similar circumstances; (2) justifiable reliance; and (3) that the plaintiff's justifiable reliance caused ascertainable loss." *See Slapikas v. First American Title Ins. Co.*, 2014 WL 899355, at *6 (W.D.Pa. March 7, 2014) (citing *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 221, 224 (3d Cir. 2008)).

Wells Fargo moves for summary judgment on the grounds that "it did not engage in any deceptive acts arising from or relating to payments made in connection with Plaintiff's [l]oan [m]odification[, and] Plaintiff never identifies Wells Fargo's alleged 'deceptive acts,' except to contend that Wells Fargo collected improper fees and charges from Plaintiff that were not due." Def.'s Br. in Supp. of Mot. for Summ. J. [ECF No. 653] at 14.

Plaintiff seemingly misapprehends Wells Fargo's argument in support of summary

judgment and ignores the elements of a deceptive act and justifiable reliance and argues that she has sufficiently shown loss in association with the inflated lien on her property and an alleged payment in the amount of $1,092.39. *See* Pl.'s Op. Br. [ECF No. 666] at 12. Additionally, Plaintiff cursorily argues that Wells Fargo's failure to address *Belmont v. MB Inc. Partners, Inc.*, 708 F.3d 470 (3d Cir. 2013) is "fatal to its position[,]" without explaining why. This argument will not be addressed. *See John Wyeth & Bro. Ltd. v. CIGNA Intern. Corp.*, 119 F.3d 1070, 1076 n. 6 (3d Cir. 1997) ("arguments raised in passing . . . but not squarely argued, are considered waived.").

The only instance in which Plaintiff addresses whether Wells Fargo acted deceptively is hidden in a footnote. Plaintiff argues that:

> Wells Fargo also feints toward an argument that it did nothing deceptive. Ms. Glover has alleged that Wells Fargo demanded fees that were not owed and, even if actually owed, that those fees were illegal. This Court has already determined that 'Wells Fargo's alleged misrepresentation of the amounts due under the loan modification agreement could be considered deceptive conduct as it gave a false impression of the amount owed.' [Memo. Op. (ECF No. 166) at 23]. Wells Fargo has not refuted this allegation (for instance, by providing evidence that the fees demanded upon entering the loan modification were proper.

*Id*. at 10 n. 4.

Plaintiff attempts to shift the burden of proof to Wells Fargo by arguing that it never proved that the amounts were proper. However, in the context of this motion, it is incumbent upon Plaintiff to produce evidence of her claim. The non-moving party, Plaintiff, bears the burden of establishing the essential elements of her claim by bringing forth sufficient evidence in support thereof to survive summary judgment. In meeting this burden, the non-moving party may not rely on bare assertions or conclusory allegations. That is what Plaintiff does here. Additionally, while the court must draw all factual inference in favor of the non-moving party,

there is no materially contradictory evidence that would require the court to do so. Plaintiff has ultimately failed to illustrate any evidence of deceptive conduct or justifiable reliance. While Plaintiff's barren arguments may allow her to survive dismissal under Rule 12(b)(6), it is not sufficient to allow an evidence-less claim to proceed past summary judgment. This Court will not proceed with this witch hunt particularly commanded by Plaintiff's counsel to find a cognizable claim against Wells Fargo.

Accordingly, it is respectfully recommended that Wells Fargo's motion for summary judgment as to the UTPCPL claim be granted.

### D. Conclusion

For the foregoing reasons, it is respectfully recommended that Defendant Wells Fargo's motion for summary judgment be granted in all respects except for the limited issue surrounding the FDCPA claim arising after June 7, 2007, for which further briefing should be ordered.

In accordance with the Magistrate Judge's Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72(D)(2) of the Local Rules pertaining to Magistrate Judges, the parties are permitted until June 5, 2014 to file written objections to this Report and Recommendation. Failure to do so may waive the right to appeal. Any part opposing written objections shall have fourteen days after the service of such objections to respond thereto.

Dated: May 22, 2014

Respectfully submitted,

/s Robert C. Mitchell
ROBERT C. MITCHELL
United States Magistrate Judge

cc:     District Judge Donetta W. Ambrose
        all counsel of record *via CM/ECF electronic filing*